STATE of Missouri, Respondent,

v.

**Vornell PARKER, Appellant,**

**and**

**Vornell PARKER, Appellant,**

v.

STATE of Missouri, Respondent.

No. 74517.

Supreme Court of Missouri,
En Banc.

July 21, 1992.

**932**

William J. Swift, Columbia, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

Vornell Parker appeals his conviction for possession of cocaine. § 195.020, RSMo 1986. After opinion, the Missouri Court of Appeals, Eastern District, transferred the case to this Court to reexamine *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). The case is remanded.

Appellant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, shows that Detective Richard Will received a tip from a confidential informant that appellant and his brother, Aaron, were storing a large amount of cocaine in an apartment next door to their residence. Detective Will reported the information to his supervisor, Sergeant Henderson, who ordered surveillance of the residence. Detectives Will and Swederski participated in the surveillance and saw appellant carrying a briefcase which, the informant reported, appellant used to transfer drugs.

On March 3, 1989, the police obtained a search warrant and executed it. After the police unsuccessfully attempted to gain admission to appellant's dwelling by knocking and announcing their presence, Will forced open the front door with a sledge hammer. As the police entered the residence, they observed appellant running toward the kitchen. Will chased appellant and saw him toss a bag of cocaine behind the refrigerator. A subsequent search revealed two additional bags of cocaine.

After trial, the jury found appellant guilty of possession of cocaine in violation of § 195.020, RSMo 1986. On February 9, 1990, the court sentenced appellant as a prior and persistent offender to seven years imprisonment. Appellant filed a *pro se Rule 29.15* motion. Appointed counsel filed a timely amended motion. After conducting an evidentiary hearing, the court denied appellant's motion.

Appellant's first point on appeal is a claim involving equal protection as it relates to the government's exercise of peremptory challenges. Appellant's claim is framed in the alternative. He contends that he established a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); he argues in the alternative that, even if he failed to establish a prima facie case under *Batson*, it was error for the trial court not to have required the state to explain its peremptory strikes as directed in *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). Appellant claims that the trial court's failure to comply with *Antwine's* directive prevented him from establishing that the state's strikes were racially motivated in violation of his and the excluded venirepersons' equal protection rights.

A brief recapitulation of the development of the law affecting equal pro-

tection and peremptory strikes is warranted, to serve as a background for the analysis of appellant's claim. The United States Supreme Court has long recognized that the United States Constitution prohibits all forms of purposeful racial discrimination in the selection of jurors. *See Martin v. Texas,* 200 U.S. 316, 319, 26 S.Ct. 338, 338, 50 L.Ed. 497 (1906). Trying a criminal defendant before a jury from which members of the defendant's race have been purposefully excluded denies that person equal protection of the law because it denies that person the protection that a trial by jury is intended to secure. *Strauder v. West Virginia,* 100 U.S. 303, 309, 25 L.Ed. 664 (1880). In addition, discrimination in jury selection violates the constitutional rights of the excluded venirepersons by denying them the opportunity to participate in the administration of justice on an equal footing with other citizens. *Id.* 100 U.S. at 308.

The United States Supreme Court first sought to protect equal protection rights from encroachment by prosecutors exercising peremptory challenges in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain* the Court emphasized the importance of peremptory challenges in ensuring an impartial jury. The Court found that equal protection rights of a defendant are violated if the defendant can show that the prosecutor consistently and systematically struck African–Americans from the venire in case after case regardless of the circumstance, with the result that no African–Americans ever served on petit juries. *Id.* 380 U.S. at 223, 85 S.Ct. at 837. The *Swain* burden of proof imposed a nearly insurmountable obstacle to the vindication of black persons' equal protection rights as evidenced by the fact that in the twenty-one years after *Swain,* only two defendants were able to establish a case of discrimination. Theodore McMillian & Christopher J. Petrini, *Batson v. Kentucky: A Promise Unfulfilled,* 58 UMKC L.Rev. 361, 365 (1990).

In *Batson* the United States Supreme Court recognized that the crippling burden of proof imposed upon defendants by *Swain* nearly immunized a prosecutor's use of peremptory challenges from consti-

tutional scrutiny. The *Batson* Court replaced the *Swain* test with an evidentiary framework, modeled on Title VII of the 1964 Civil Rights Act, that permits a defendant to prove discrimination in selection of the petit jury solely by evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 365–66; *See also* L. Ashley Lyu, *Getting at the Truth: Adversarial Hearings in Batson Inquiries,* 57 Fordham L.Rev. 725, 729 (1990); *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723.

The three-step process delineated by the Court in *Batson* allows a defendant to challenge the state's peremptory strikes to vindicate his own equal protection rights. *Id.* at 96–98, 106 S.Ct. at 1723–24. The first step requires the defendant to come forward with a prima facie showing of purposeful discrimination. *Id.* at 96–97, 106 S.Ct. at 1723. To prove a prima facie case under *Batson,* the defendant must show that he is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire. The defendant is entitled to rely on the fact that peremptory challenges permit prosecutors to discriminate and to rely on any other relevant circumstances to raise an inference that the prosecutor used peremptory challenges to exclude venirepersons from the petit jury on account of race. *Id.* at 96, 106 S.Ct. at 1723.

Subsequently the United States Supreme Court dispensed with the *Batson* prima facie case requirement of racial identity between the defendant and the excluded venireperson in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers* the Supreme Court recognized that *Batson* challenges were meant to protect not only the defendant's equal protection rights but also the equal protection rights of excluded venirepersons. *Id.* 111 S.Ct. at 1370. To facilitate the vindication of these excluded venirepersons' rights, the Court held that a criminal defendant has standing to assert the equal protection rights of venirepersons excluded

for racial reasons from their jury. *Id.* at 1368–70.[1]

In *Edmonson v. Leesville,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court again focused on protecting venirepersons from racial discrimination and maintaining the public's confidence in the judicial process in deciding that racially motivated strikes by civil litigants violate the Constitution and may be challenged by the opposing party. *Id.* 111 S.Ct. at 2088.[2] The importance of protecting the dignity of persons and the integrity of the courts from damage inflicted through racially motivated peremptory strikes was recently reaffirmed in *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). In *McCollum* the Supreme Court determined that the state may challenge a criminal defendant's peremptory strikes to vindicate the excluded venirepersons' and society's interest in eradicating racial discrimination from the courtroom. *Id.* —— U.S. at ——, 112 S.Ct. at 2358–59.

■ After *McCollum,* any party may invoke a *Batson* claim. Once a party has established a prima facie case under *Batson,* the other party must give race-neutral reasons for the challenged peremptory strikes. The prosecutor's explanations must be more than an unsubstantiated denial of discriminatory purpose or affirmance of good faith, but an explanation rising to the level of exclusion for cause is not required. *Id.* 476 U.S. at 97–98, 106 S.Ct. at 1723–24. To be sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried. *Id.* at 98, 106 S.Ct. at 1724. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Hernandez v. New York,* ——

U.S. ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). Even if the prosecutor's explanation results in the disproportionate removal of minority venireperson, disparate impact alone will not convert a facially race-neutral explanation into a *per se* violation of equal protection. *Id.* 111 S.Ct. at 1867.

■ Once the prosecutor offers a sufficient race-neutral explanation for the challenge, the prima facie case is rebutted. The *Batson* inquiry moves on to the third step, which requires the court to determine whether the defendant has established purposeful discrimination. *Id.* 111 S.Ct. at 1868. To succeed, the defendant must show that the prosecutor's proffered reasons are merely pretextual and that the true motivation for the strike was racial. *Antwine,* 743 S.W.2d at 64; *see also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). The focus at this stage of the inquiry is upon the plausibility of the prosecutor's explanation in view of the totality of the facts and circumstances of the case. Much of the determination, by necessity, turns upon evaluation of intangibles such as credibility and demeanor. Trial judges are, therefore, vested with considerable discretion in determining whether the defendant established purposeful discrimination. *Hernandez,* 111 S.Ct. at 1869; *Antwine,* 743 S.W.2d at 65–66.

■ While the Supreme Court has delineated the constitutional concerns at issue, it has explicitly and repeatedly denied any intention to prescribe particular rules or procedures for the implementation of *Batson* and its progeny. *Batson,* 476 U.S. at 99, 106 S.Ct. at 1724; *Edmonson,* 111 S.Ct. at 2089; *Powers,* 111 S.Ct. at 1374. The

---

1. The defendant's race becomes irrelevant when the defendant asserts a minority venireperson's equal protection rights. The critical inquiry is the venireperson's membership in a cognizable racial minority.

2. The *Edmonson* Court found that peremptory challenges were not constitutionally required but were simply a long-standing legislative or common law device to allow litigants to assist the government in the selection of an impartial jury. *Id.* 111 S.Ct. at 2083. The litigant's actions in striking venirepersons are so closely tied to governmental functions and authority that it is fair to deem the civil litigant a state actor when exercising peremptory challenges. *Id.* at 2083–87. The civil litigant is merely exercising delegated governmental power, thus is subject to the strictures of the Constitution. *Id.* at 2088.

task of formulating procedures and rules has been left to the lower courts. *Powers,* 111 S.Ct. at 1374.

Before addressing appellant's *Batson* claim on the merits, it is necessary to confront the state's assertion that appellant failed to preserve his *Batson* claim with a timely objection. It is unclear whether appellant raised the claim before or after exercising peremptory strikes. The record reflects that appellant raised a *Batson* objection, at the latest, prior to any of the qualified and eligible but not selected venirepersons' being excused.

While *Batson* recognized the right of criminal defendants to challenge racially motivated strikes by the prosecutor, the Court explicitly predicated the right upon the defendant's timely objection. *See Batson,* 476 U.S. at 96–99, 106 S.Ct. at 1723–24; *United States v. Dobynes,* 905 F.2d 1192, 1196 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 167 (1991). Subsequent to *Batson,* "both the federal and state courts have consistently held that the failure to make a timely objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to *Batson.*" Brian J. Serr & Mark Maney, *Racism, Peremptory Challenges and the Democratic Jury: The Jurisprudence of a Delicate Balance,* 79 J.Crim.L. and Criminology 1, 19 (1988); *See, e.g. United States v. Cashwell,* 950 F.2d 699, 704 (11th Cir.1992); *United States v. Masat,* 948 F.2d 923, 927 (5th Cir.1991); *State v. English,* 795 S.W.2d 610, 612 (Mo.App.1990); *People v. Lockhart,* 201 Ill.App.3d 700, 146 Ill.Dec. 1011, 1016, 558 N.E.2d 1345, 1350 (1990).

Although it is clear that a defendant must timely object to preserve a *Batson* claim, the United States Supreme Court has declined to decide precisely when an objection must be made. *Batson,* 476 U.S. at 99–100, 106 S.Ct. at 1724–25; *Ford v. Georgia,* — U.S. ——, ——, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991). The Court has recognized that local practices should govern timeliness in the context of the various procedures employed to try criminal cases. *Id.* at ——, 111 S.Ct. at 857. State courts

occupy a superior position to adopt general rules regarding the timeliness of *Batson* claims. *Id.* — U.S. at ——, 111 S.Ct. at 857.

This Court is confronted for the first time with determining when a *Batson* claim must be raised in Missouri. Concern for protecting to the maximum extent possible the equal protection rights of both the accused and the excluded venirepersons, consistent with the constraints imposed by Missouri's jury selection process, guides the decision. *See Batson,* 476 U.S. at 87, 106 S.Ct. at 1718; *Powers,* — U.S. at —— – ——, 111 S.Ct. at 1367–68.

Appellant asserts that a *Batson* challenge raised before the venire is discharged and the jury sworn is timely. The state urges adoption of a timeliness rule that would require *Batson* claims to be made after the state makes its peremptory strikes but before a defendant exercises his peremptory strikes. The state's position has recently been adopted by both the eastern and western districts of the Missouri Court of Appeals. *State v. McMahan,* 821 S.W.2d 110, 113 (Mo.App.1991); *State v. Davis,* 830 S.W.2d 469 (Mo.App.1992); *State v. Smith,* 831 S.W.2d 781 (Mo.App. 1992).

This Court finds that a *Batson* challenge raised before the venire is excused and the jury sworn is timely. Although the language of the cases upon which *McMahan, Davis,* and *Smith* rely would seem to support the holdings, the extension of existing precedent to require defendants to raise *Batson* before exercising their own strikes is not supported by the reasoning of the cases upon which *McMahan, Davis,* and *Smith* rely, *see State v. English,* 795 S.W.2d 610, 612 (Mo. App.1990); *State v. Smith,* 791 S.W.2d 744, 747 (Mo.App.1990); *State v. Lawrence,* 791 S.W.2d 729, 730 (Mo.App.1990), all of which involved challenges made after the venire was dismissed. More importantly, the court of appeals decisions relied on the rationale that waiver was appropriate to prevent post-discharge *Batson* challenges. *See English,* 795 S.W.2d at 612; *Smith,* 791 S.W.2d at 747. The districts reasoned

that sustaining a *Batson* challenge after discharge of the venire necessitates the calling of a new venire and the selection of a new jury, thereby delaying justice and wasting judicial time and resources. *See English*, 795 S.W.2d at 612; *Smith*, 791 S.W.2d at 747.

While requiring defendants to raise *Batson* prior to exercising their own peremptory strikes promotes judicial economy to the same extent as requiring defendants to raise *Batson* before the venire is excused, no persuasive rationale for requiring defendants to make the *Batson* challenge at the earlier time has been suggested. The sole argument advanced in support of requiring defendants to raise *Batson* immediately after the state's peremptory strikes is that trial error should be brought to the trial court's attention at the earliest possible opportunity. *See Davis*, 830 S.W.2d at 471–72; *English*, 795 S.W.2d at 612. As noted by the state, once the state has made its strikes, the defendant has all the facts and information necessary to make a *Batson* challenge. The validity of the state's position, however, is suspect in view of the *de minimis* temporal distinction between requiring defendants to raise *Batson* before exercising their strikes and requiring them to raise the challenge before the venire is dismissed. In any event, examination of the source of the "earliest possible opportunity" rule reveals that the purpose behind the rule is not to impose an arbitrary procedural hurdle, but, rather, to ensure that trial courts will be able to take corrective action. *See State v. Newman*, 699 S.W.2d 29, 32 (Mo.App.1985).

This Court reasons that the timeliness rule for *Batson* challenges should be devised so as to allow the trial court the opportunity to correct errors and avoid prejudice in the first instance, without unduly hampering the vindication of the equal protection rights *Batson* is meant to protect. *See Government of Virgin Islands*

*v. Forte*, 806 F.2d 73, 75–6 (3rd Cir.1986), *cert. denied*, — U.S. —, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991); *State v. Wiley*, 513 So.2d 849, 862–63 (La.App. 2 Cir.1987). The error at issue in a *Batson* challenge is, of course, the state's racially discriminatory use of peremptory strikes in violation of both the accused's and the excluded venirepersons' equal protection rights. *Powers*, — U.S. at — – —, 111 S.Ct. at 1368–69. Quashing the panel and commencing the jury selection process anew does not really correct the error. The defendant is simply accorded a new opportunity to obtain a jury composed according to race-neutral criterion; the discrimination endured by the excluded venirepersons goes completely unredressed since they remain wrongfully excluded from jury service.

Requiring defendants to make *Batson* challenges prior to the venire's dismissal, on the other hand, allows the trial court to determine whether a constitutional violation has occurred while there remains time to correct the error by disallowing the offending strike.[3] *See Dobynes*, 905 F.2d at 1196; *United States v. Forbes*, 816 F.2d 1006, 1011 (5th Cir.1987). Judicial time and resources, moreover, are maximized because there is no need to quash the jury and call a new venire. *See Pacee v. State*, 816 S.W.2d 856, 859 (Ark.1991); *McGruder v. State*, 560 So.2d 1137, 1142–43 (Ala.Cr. App.1989); *United States v. Erwin*, 793 F.2d 656, 667 (5th Cir.), *cert. denied*, 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986); *McGruder*, 560 So.2d at 1143; *Simmons v. Commonwealth*, 746 S.W.2d 393, 398 (Ky.), *cert. denied*, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1988); *English*, 795 S.W.2d at 612; *Smith*, 791 S.W.2d at 747. The Court's ability to correct error is not enhanced by requiring *Batson* to be raised before the defendant exercises his own peremptory strikes.

Despite contentions to the contrary,[4] no appreciable interference with the orderly

---

3. Trial courts should refrain from releasing venirepersons who have been peremptorily struck until the venire is excused.

4. The state argues that § 494.480.4 requires the state make its peremptory strikes first, followed by the defendant and that requiring the defendant to make a *Batson* motion before exercising the defendant's strikes furthers the orderly procedure of defense strikes being made after the state's strikes.

procedure of strikes is caused by allowing defendants to raise *Batson* after exercising their own strikes. The court can easily allow the state to exercise fully its peremptory strikes by removing another venireperson in a race-neutral manner should the court find the challenged strike was racially motivated. Furthermore, after *Georgia v. McCollum, Batson* challenges will be procedurally simplified if both sides are required to make challenges at the same time. Since strikes are sometimes conducted off the record, it will be difficult for a reviewing court to determine whether the challenge was raised before the defendant exercised the strikes. Effective review will be facilitated, therefore, by requiring all parties to raise *Batson* prior to the venire's discharge.

In sum, this Court agrees that "[i]t is the release of the unselected members of the venire and the problems and difficulties created thereby which truly govern the timeliness of a *Batson* motion." *McGruder*, 560 So.2d at 1143; *see also United States v. Masat*, 948 F.2d 923 (5th Cir. 1991); *Dobynes*, 905 F.2d at 1196; *United States v. Romero-Reyna*, 867 F.2d 834, 836–37 (5th Cir.), *appeal after remand*, 889 F.2d 559 (5th Cir.1989), *cert. denied*, 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990). This Court, therefore, holds that appellant's *Batson* challenge raised immediately prior to the venire's being excused was timely made.

The Court now turns to the merits of appellant's equal protection complaint. An examination of the relevant facts reveals that after both parties completed their peremptory strikes, the trial court asked the attorneys how many African-Americans were on the venire and how many had been struck by the state. Both attorneys agreed that there had been ten African-Americans on the venire and that the state struck five of them. The court, appearing to rely on numbers and population ratio, stated that

there was no need to have a hearing but offered to require the state to provide explanations for its strikes if appellant requested. Appellant's counsel responded by raising a *Batson* objection and moving to quash the jury panel on the ground that the state used five of seven peremptory strikes against African-American venirepersons on the basis of race alone and similarly situated white venirepersons were not struck. The court summarily overruled the motion, then asked the prosecutor if he thought it was necessary to have a hearing. The prosecutor declined to make a record of the strikes unless required to do so by the court.[5]

Appellant contends that he established a prima facie case under *Batson* and that the trial court's error in failing to require the state to come forward with race-neutral explanations for the five strikes deprived him of the opportunity to vindicate his and the excluded venirepersons' rights to equal protection. Appellant argues in the alternative that even if he failed to establish a prima facie case under *Batson*, it was error for the trial court not to require the state to explain its peremptory strikes because this Court in *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987), directed trial courts to consider the prosecutor's explanation as part of the process of determining whether the defendant has established a prima facie case. Appellant claims that the trial court's failure to comply with *Antwine's* directive prevented him from establishing that the state's strikes were racially motivated in violation of his and the excluded venirepersons' equal protection rights. Appellant's claim under *Antwine* is dispositive.

To reiterate, *Antwine* directs that the trial court consider, as part of the defendant's prima facie case, the prosecutor's explanation for its peremptory strikes. *Antwine*, 743 S.W.2d at 64. The state concedes that the trial court did not comply

---

**5.** The state contends that appellant waived his claim as a consequence of his failure to insist upon explanations from the prosecutor when the trial court offered to require the state to provide race-neutral explanations. Since it appears that *Antwine* contemplates that trial

courts will request the prosecutor to provide reasons for the strikes without having been asked to do so by the defendant, *see State v. Robinson*, 811 S.W.2d 460, 462 (Mo.App.1991), this Court will consider appellant not to have waived his *Batson* claim.

with the *Antwine* directive to consider the prosecutor's explanation as part of the prima facie case. The state contends, however, that the *Antwine* directive requiring the state to come forward with race-neutral explanations as part of the prima facie case is in conflict with *Batson* because, after *Hernandez*, the state is, in effect, forced to waive any challenge to the defendant's failure to establish a prima facie case.

The state is correct that under the procedure suggested in *Batson* the defense is required to establish a prima facie case of discrimination against venirepersons of a racial minority before the burden of production shifts to the state to come forward with race-neutral explanations for the suspect challenges. *See Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The state is equally correct that under the procedure adopted by this Court in *Antwine* the state is required to offer its explanations for the challenged strikes without having an opportunity to contest the existence of a prima facie case. *See Antwine*, 743 S.W.2d at 64.

The fact that the procedure set forth in *Antwine* differs from the procedure suggested by *Batson* does not, however, establish an impermissible conflict between *Batson* and *Antwine*. The United States Supreme Court has repeatedly emphasized that it has not formulated, and does not intend to formulate, particular rules or procedures for the implementation of *Batson* and its progeny. *Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725; *Powers*, —— U.S. at ——, 111 S.Ct. at 1374; *Edmonson*, —— U.S. ——, 111 S.Ct. at 2089. The states are free to develop procedures for the vindication of *Batson* claims, subject, of course, to constitutional constraints. *See Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24; *Jones v. Jones*, 938 F.2d 838, 844 (8th Cir.1991). The *Antwine* procedures, therefore, need not mirror *Batson* so long as they do not offend constitutionally mandated protections.

 While requiring the state to provide race-neutral reasons for its strikes each time a defendant raises a *Batson* challenge may be somewhat inconvenient for the state, the procedure is not unconstitutional. The establishment of a prima facie case by the defendant is of no independent constitutional significance. Once an explanation has been offered by the prosecutor or required by the court and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot. *Hernandez v. New York*, —— U.S. at ——, 111 S.Ct. at 1866; *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir.1987); *State v. Kempker*, 824 S.W.2d 909, 910 (Mo. banc 1992). The *Batson* prima facie case requirements may be significantly altered, *see State v. Holloway*, 209 Conn. 636, 553 A.2d 166, 172–73 n. 4 (1989); *State v. Jones*, 293 S.C. 54, 358 S.E.2d 701, 703 (1987), or even completely eliminated, *see United States v. Lawrence*, 30 M.J. 1140, 1141 (CMR 1990); *United States v. Moore*, 28 M.J. 366, 368 (CMA 1989), without offending against the Constitution. The state, therefore, has no basis for insisting upon the opportunity to challenge the defendant's prima facie case before providing the court with race-neutral explanations.

In the interest of conservation of judicial resources, this Court in *Antwine* sought to eliminate the need for an appellate court to remand to the trial court to determine whether the prosecutor racially discriminated in the exercise of the state's peremptory challenges. *Antwine* sought to develop a procedure to include the prosecutor's explanations somewhat contemporaneously with the defendant's *Batson* objection while all of the relevant participants are present and the events of voir dire remain fresh in the participants' minds. *See Antwine*, 743 S.W.2d at 64. The danger of post-hoc rationalizations or fabrications is minimized because the prosecutor is forced contemporaneously to justify the reasons for the strikes.

Although this Court detects no constitutional infirmity in the procedure promulgated by this Court in *Antwine*, the Court acknowledges that *Antwine* has proven confusing and difficult to apply. The difficulty stems in no small measure from this

Court's attempt to consolidate the *Batson* inquiry into a unitary proceeding while continuing to employ the vocabulary of *Batson*, which contemplates a multistage inquiry. The Court in *Antwine* directed trial courts to assess the validity of the prosecutor's explanation, to consider the entire milieu of voir dire both subjectively and objectively, and to focus upon all of the information and intuitive perceptions gathered by the judge to determine whether the prosecutor's use of peremptory strikes proceeded from a racially discriminatory motive. *Antwine*, 743 S.W.2d at 64–5. In essence, the trial courts were to make the ultimate determination of purposeful discrimination in the context of the prima facie case.

The trial courts were understandably confused as to how to proceed after making the finding that the defendant had established a prima facie case under *Batson*. The remaining steps of *Batson*, requiring the state to come forward with race-neutral explanations, then determining whether the defendant has established purposeful discrimination, seemed meaningless and redundant in view of *Antwine's* prima facie case requirements. As a result, the trial courts applied *Antwine* sporadically and inconsistently. *See e.g., State v. Smith*, 831 S.W.2d 781 (Mo.App.1992); *State v. Roper*, 1992 WL 3235 (Mo.App.1992); *State v. Hudson*, 815 S.W.2d 430, 433 (Mo.App. 1991); *State v. Hunter*, 802 S.W.2d 201, 204 (Mo.App.1991). Even this Court ignored the *Antwine* directive in holding that it was unnecessary for the trial court to consider the state's explanations for its peremptory challenges before determining that the defendant had failed to establish a prima facie case. *State v. Burgess*, 800 S.W.2d 743, 747–8 (Mo. banc 1990). The apparent abandonment of *Antwine* in favor of traditional *Batson* analysis has left the trial courts without clear guidance as to the proper procedure to follow when a defendant raises a *Batson* challenge. *See State v. Hudson*, 815 S.W.2d at 433.

■ To clarify the confusion, this Court enunciates anew the procedure to be followed by the trial court when confronted with a defendant's timely *Batson* objection. First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.[6] *See Batson*, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20; *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App.1991). Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *See Antwine*, 743 S.W.2d at 64; *Jones v. Jones*, 938 F.2d at 844.

■ In determining whether the defendant has carried the burden of proof and established the existence of purposeful discrimination, the trial court should take into account a variety of factors.[7] *See Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *Antwine*, 743 S.W.2d at 63; *Jackson*, 809 S.W.2d at 81. The chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case.[8] *See Antwine*, 743 S.W.2d at 65. Any facts or circumstances that detract from or lend credence to the prosecutor's proffered explanations are, therefore, rele-

---

6. As noted above, the prosecutor's explanation will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1866.

7. The trial court's determination regarding purposeful discrimination remains a finding of fact that will not be overturned on appeal unless clearly erroneous. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1871; *Antwine*, 743 S.W.2d at 66.

8. While prosecutors are free to use "horse sense" and "play hunches" in exercising peremptory challenges so long as the factors they rely on are race-neutral, objective justifications for exercising peremptory strikes against minority venirepersons are the most persuasive. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

vant. The existence of similarly situated white jurors who were not struck by the prosecution is certainly probative of pretext. *See Kempker,* 824 S.W.2d at 910–11. The degree of logical relevance between the proffered explanation and the case to be tried in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment if the defendant is convicted is likewise important. *Antwine,* 743 S.W.2d at 65. The prosecutor's demeanor or statements during voir dire, *State v. Jones,* 747 S.W.2d 229, 231 (Mo.App.1988), as well as the demeanor of the excluded venirepersons, should be considered. *Antwine,* 743 S.W.2d at 65. The court's past experiences with the prosecutor might also be relevant. *State v. Hunter,* 802 S.W.2d at 203. Objective factors bearing on the state's motive to discriminate on the basis of race, such as the conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses, are also worthy of consideration. *Hernandez,* — U.S. at —, 111 S.Ct. at 1868; *State v. Burgess,* 800 S.W.2d at 747; *State v. Williams,* 784 S.W.2d 309, 313 (Mo.App.1990).

◼ Not all of the factors formerly considered in relation to *Batson* remain valid in the wake of recent equal protection jurisprudence. Constitutional constraints upon the prosecution's exercise of peremptory challenges were originally directed toward protecting the defendant's equal protection rights. *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723; *State v. Vincent,* 755 S.W.2d 400, 402 (Mo.App.1988). *Powers v. Ohio,* however, significantly expanded the scope of *Batson* challenges to allow defendants to assert through *Batson* challenges not only their own equal protection rights but also the equal protection rights of the excluded venirepersons. *Powers,* — U.S. at —, 111 S.Ct. at 1373. As a result, the former practice of placing decisive reliance upon the presence of African–Americans on the defendant's jury, *State v. Burgess,* 800 S.W.2d at 747, *State v. Crump,* 747 S.W.2d 193, 196 (Mo.App.1988), or the state's failure to use all of its strikes to remove African–American venirepersons, *State v. Griffin,* 756 S.W.2d 475, 482 (Mo.

banc 1988); *State v. Robinson,* 811 S.W.2d at 462–63; *State v. Ivory,* 813 S.W.2d 102, 104 (Mo.App.1991), to undercut any inference of discrimination by the state is no longer valid. The removal of even one African–American person from the venire for racial reasons constitutes a violation of the equal protection clause regardless of the racial composition of the selected jury. *United States v. Matha,* 915 F.2d 1220, 1221 (8th Cir.1990); *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987); *see also Alvarado v. United States,* 497 U.S. 543, 543, 110 S.Ct. 2995, 2996, 111 L.Ed.2d 439 (1990). Likewise, the state's failure to use all of its challenges against minorities does not automatically insulate from constitutional scrutiny strikes directed against other minority venirepersons. *United States v. Alvarado,* 923 F.2d 253, 256 (2d Cir.1991). At most, the state's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes. *See United States v. Moore,* 895 F.2d 484, 486 n. 5 (8th Cir.1990); *United States v. Young–Bey,* 893 F.2d 178, 180 (8th Cir.1990).

In sum, this Court continues to find that a unitary procedure for the vindication of *Batson* claims is superior to the bifurcated procedure suggested by *Batson.* Missouri's procedure better protects the equal protection rights of defendants and venirepersons and facilitates the efficient administration of justice in this state. Finding that the prima facie showing requirement under *Batson* is not constitutionally required, *see Hernandez v. New York,* — U.S. at —, 111 S.Ct. at 1866; *United States v. Forbes,* 816 F.2d at 1010, trial courts shall no longer make such a finding. Trial courts are directed to conduct an evidentiary hearing to determine whether the prosecutor's strike was racially motivated, as outlined above, once the defendant has properly raised a *Batson* challenge.

This case must be remanded to the trial court for a hearing to determine whether

the prosecutor used the state's strikes in a discriminatory manner. The trial court shall certify to this Court a record of its proceeding.

Remanded for a hearing consistent with the holding of this opinion.

ROBERTSON, C.J., and HOLSTEIN and THOMAS, JJ., concur.

BENTON and PRICE, JJ., concur in separate opinions filed.

PREWITT, Special Judge, dissents.

BENTON, Judge, concurring.

I concur fully but write separately to express concern about the continuing validity of peremptory challenges. § 494.480 RSMo Supp.1989.

The principal opinion comprehensively chronicles the expansion of *Batson*. On its facts, *Batson* only covered an African–American defendant and African–American venirepersons struck by the prosecution in criminal cases. 476 U.S. at 82–84, 106 S.Ct. at 1714–1716. By emphasizing the right of venirepersons to equal protection, subsequent cases now control peremptory challenges by both parties—regardless of race—in both criminal and civil cases. *Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991). Thus is "the tendency of a principle to expand itself to the limit of its logic. . . ." Benjamin N. Cardozo, *Nature of the Judicial Process* 51 (1921).

Based on these decisions, and their equal protection rationale, *Batson* may well expand further. Concurring in *McCollum*, Justice Clarence Thomas notes recent decisions addressing exclusions of white venirepersons and on the basis of gender. *McCollum*, —— U.S. at ——, 112 S.Ct. at 2360 (Thomas, J., concurring). The United States Supreme Court could hear a case on gender discrimination in its next term. *See United States v. De Gross*, 960 F.2d 1433 (9th Cir. banc 1992). The Court of Appeals, Eastern District, has transferred to this Court a case on gender discrimination. *State v. Pullen*, No. 56820, 1992 WL 121791 (Mo.App. June 9, 1992).

*Pullen* poses the question whether the equal protection clause of the United States Constitution (or its Missouri equivalent) prohibits discrimination against women in the use of peremptory challenges. Two questions logically arise. First, if gender discrimination in peremptory strikes violates the equal protection clause, does that clause prohibit discrimination against both genders, or only against women? Second, if *Batson* covers discrimination against both genders, is this truncated strike so different from the traditional peremptory strike as to lack legislative authorization?

This second question requires delimiting "traditional peremptory strike." § 494.480 RSMo Supp.1991. If peremptory strikes are those made for any reason whatsoever, then such a strike is constitutionally forbidden. If, on the other hand, a peremptory strike is a strike for an ever-shrinking set of reasons that must be supported by objective evidence, then the strike may be constitutional, but definitely is not a traditional peremptory strike.

With the understanding that these issues are not here resolved, I concur fully in the principal opinion.

PRICE, Judge, concurring.

I concur with the result and analysis stated in the majority opinion, as it pertains to the facts of the case at hand. However, the facts of the case at hand and, therefore, the opinion as well, may not reflect the full impact of *Batson* and its progeny.[1]

Although each of the *Batson* cases decided by the United States Supreme Court dealt with attempts to exclude African–

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Edmonson v. Leesville Concrete Co., Inc.*, —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); and *Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

Americans from service on petit juries, the language, logic, and spirit of the cases appear broader. As was most recently stated in *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992):

> This Court firmly has rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror. As this Court stated just last Term in *Powers,* "[w]e may not accept as a defense to racial discrimination the very stereotype the law condemns." 499 U.S., at ——, 111 S.Ct., at 1370. *"In our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption—as a per se rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion."* Ristaino v. Ross, 424 U.S. 589, 596, n. 8, 96 S.Ct. 1017, 1021, n. 8, 47 L.Ed.2d 258 (1976). We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party. (Emphasis supplied.)

In *Powers,* —— U.S. at ——, 111 S.Ct. at 1370, the Supreme Court emphasized the rights of individuals to serve on petit juries. It stated:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a *significant opportunity to participate in civic life.* An individual juror does not have a right to sit on any particular petit jury, but *he or she does possess the right not to be excluded from one on account of race.* (Emphasis supplied.)

The elevated protection required by these cases of the rights of individuals to serve as jurors may extend beyond racial discrimination to religious, gender-based, or ethnic discrimination as well, either under the United States or the Missouri Constitutions. Interestingly, the Missouri Constitution may require greater protection of the right of an individual to serve on a petit jury than does the United States Constitution.

While our Missouri Constitution includes similar equal protection language to that in the United States Constitution, stating: "that all persons are created equal and are entitled to equal rights and opportunity under the law;" *art. I, § 2,* it provides further and more specific rights to individuals regarding jury service. *Article I, § 5,* provides "that no person shall on account of his religious persuasion or belief ... be disqualified from testifying or serving as a juror," and *art. I, § 22(b),* provides that, "no citizen shall be disqualified from jury service because of sex, ...".[2]

Thus, whether *Batson, Powers, Edmonson and McCollum* directly prohibit the use of peremptory strikes based upon religion or sex, they certainly suggest such a result when coupled with Missouri's Constitution.

Although such prohibitions certainly may require a revision of our procedures regarding peremptory strikes, they need not cause the abolishment of peremptory strikes. The long tradition and value of peremptory strikes to our judicial process was duly noted in *Swain v. State of Alabama,* 380 U.S. 202, 211–221, 85 S.Ct. 824, 831–836, 13 L.Ed.2d 759 (1965), and is provided for in Missouri by statute, § 494.480, RSMo. The survival of this procedure in a constitutionally permissible manner need be neither offensive nor unduly burdensome to our courts and lawyers. Whatever complications that may result are a small price to make citizen participation in our judicial process free from the taint of racial, gender-based, religious, or ethnic discrimination. The trial lawyer may still continue to represent his or her client in the jury selection process by the use of per-

**2.** Article I, § 22(b), further provides that, "but the court shall excuse any woman who requests exemption therefrom before being sworn as a juror." This practice was declared to result in a systematic exclusion of women violating the Constitution's fair cross-section requirement in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

emptory strikes, when cause does not exist. Such representation simply does not justify unconstitutional discrimination.

Proper jurisprudence dictates that our present ruling be limited to the facts before us. Without the benefit of focused briefing and argument, it is folly now to attempt to define the perimeters of *Batson* and its progeny. Skillful practitioners, however, will bear in mind that these perimeters have not been finally set.