STATE of Missouri, Respondent,

v.

Matthew JACKSON, Appellant.

Matthew JACKSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 68227, 70280.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 13, 1997.

Douglas R. Hoff, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for Respondent.

KAROHL, Judge.

Defendant, Matthew Jackson, appeals after sentencing for the unlawful possession of a concealable weapon, Section 571.070 RSMo 1994.

Section 571.070 RSMo 1994, in relevant part, provides:

1. A person commits the crime of unlawful possession of a concealable firearm if he has any concealable firearm in his possession and:

(1) He has pled guilty to or has been convicted of a dangerous felony, as defined in section 556.061, RSMo, or of an attempt to commit a dangerous felony, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a dangerous felony, or confined therefor in this state or elsewhere during the five-year period immediately preceding the date of such possession; . . . .

Jackson argues the elements of the crime are possession of a concealable firearm by a defendant within five years of confinement of that defendant for a "dangerous" felony. The state suggests another interpretation in its brief, "[t]he statute appears to be written in the disjunctive which would [forever] pro-

hibit firearms to people convicted of dangerous felonies *or* to people confined in a penitentiary over the last five years for any crime." However, "for purposes of this appeal only, the State accepts the burden that it must prove that appellant was confined within the last five years for a dangerous felony." It is unnecessary for us to decide which interpretation is correct. We affirm.

The evidence presented to the jury to support this charge was as follows. On April 6, 1994, a police officer retrieved a .357 revolver from Jackson's waistband during a search of Jackson incident to his arrest for another crime. State's Exhibit 6, as shown to the jury, consisted of two documents. The first, dated December 19, 1984, recites a plea of guilty, judgment and sentence for a ten year term of imprisonment on "the offense charged, Rape, a felony, committed on August 9, 1983." The second document, dated August 9, 1984, recites a plea of guilty, judgment and sentence for a ten year term of imprisonment on "the offenses charged, Count II: Rape, a felony, committed on August 9, 1983; . . . ." In his testimony, Jackson told the jury he pled guilty in 1984 to one rape and one kidnapping.

State's Exhibit 3 page 5, which the jury saw, notes Jackson was last released from prison on November 30, 1990. Jackson was arrested on the subject charge on April 6, 1994.

■ Three of Jackson's four points on appeal depend upon his contention the state never proved he was incarcerated for a "dangerous" felony within five years of his possession of a concealable firearm. Section 556.061 RSMo 1994 defines forcible rape as a "dangerous felony." It does not define statutory rape as a "dangerous felony." In 1983, when the rape occurred, forcible rape was an unclassified felony and statutory rape was a class B felony. Instruction No. 6 only submitted whether Jackson, on November 29, 1990, "was confined for having committed the crime of rape." The instruction did not require the jury to find "forcible" rape as the crime committed in 1983. The disputed facts issue was the date when the defendant was last confined for rape, not whether the rape

charge was based on force or age of the female.

We know from a supplemental record containing an agreement of counsel the jury never saw or heard any evidence to support a finding of *forcible* rape. However, we also know by examination of the entirety of state's Exhibits 3 and 6, some of which were redacted and not seen by the jury, the state proved all of the elements of the charged crime including confirmation the 1983 rape was forcible. Jackson was not prejudiced by the failure to submit an uncontested fact issue that the conviction was for *forcible* rape.

The court admitted, without relevant objection, Exhibit 3, consisting of seven pages and two mugshots, and Exhibit 6, consisting of 22 pages. These exhibits have been filed for our review. The trial court permitted a redacted version of each exhibit to be displayed to the jury. The exhibits support a finding that Jackson was charged with forcible rape, pleaded guilty to forcible rape and was sentenced to serve 10 years on that charge. The apparent confusion over whether there were two different pleas and two sentences does not present a problem because both were for forcible rape. Jackson never contended the 1983 rape was statutory and never offered opposing evidence on the issue of forcible or statutory rape. The category of the rape conviction was never in dispute.

The state met its burden of proof. It presented evidence to support a finding on all elements of the charged crime, that Jackson possessed a concealable firearm within five years of confinement for forcible rape, a dangerous felony. The court did not err in denying Jackson's motions for a directed verdict and for acquittal. The instruction was sufficient to submit all contested elements of the charge. Points I, II and III are denied.

■ In his final point, Jackson asserts a *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) claim. To challenge the state's peremptory strike defendant must first object to the state's use of peremptory challenges as a violation of *Batson* and identify the cognizable racial group to which the venireperson belongs. *State v.*

*Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). The state must then come forward with reasonably specific race-neutral explanations for the strike. *Id.* The explanation, however, need not be persuasive, or even plausible. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the state's explanation. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral. *Id.* Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strike were merely pretextual and that the strike was racially motivated. *Parker,* 836 S.W.2d at 939.

■ At trial, Jackson attempted to assert six specific *Batson* claims. The trial court stated:

Well, you don't need to recite them at this point.

. . . .

Let the record reflect by the Court's observation the pool from which the strikes were made consisted of 17 white and ten black, including one black and two white alternates,

. . . .

The State's strikes—used only six peremptory challenges, all six of which were against black veniremen, . . . .

Jackson only appeals the trial court's overruling of one of his *Batson* motions and its finding the state did not discriminate in using one of its strikes to strike a black venireperson, Ms. Phillips. At trial, the state offered its first explanation:

Ms. Phillips is the one who said that her son had been robbed of his coat, and a response to the question about the police officers, she seemed—she did not seem believable to the testimony of the officers being such, and being that all they have is police officers in this case, I don't believe that she would follow that instruction to believe those officers.

Jackson responded that Phillips had "stated the law correctly, which was policemen are people too, so I would say that his reason for striking her is pretextural [sic]."

The state then gave a supplementary explanation:

initially when she talked about her son being robbed of the coat and being satisfied of the police officers she seemed like a good [juror] for the State. Through later questioning, when it came to believability of the police officers testifying, the *way she responded,* people are people, it gave me the inclination that she wasn't—she had pre-conceived notions of police officers testifying that would not be inclined to be open-minded by the officers' testimony. [Our emphasis.]

■ There are two preservation problems with Jackson's point on appeal. First, Jackson never responded to the state's supplementary explanation for its strike of Ms. Phillips. No discriminatory intent is inherent in the state's explanation. Second, Jackson's basis for claiming pretext changed in his motion for a new trial and changed again on appeal. At trial, Jackson claimed the state's explanation for its strike was pretextual because the venireperson had "stated the law correctly, which was police are people too. . . ." In his motion for a new trial, Jackson claims the state "failed to provide race neutral reasons for making those strikes as there were similarly situated white jurors, . . . ." The trial court was never asked to consider that ground before the jury was selected. On appeal, Jackson claims "THE STATE'S REASONS FOR STRIKING VENIREPERSON [MS.] PHILLIPS WERE CONTRADICTED BY THE RECORD, AND, THEREFORE, INVALID." The general rule with respect to preservation of error is that an objection stating the grounds must be made at trial, the same objection must be set out in the motion for new trial and must be carried forward in the appeal brief to preserve it. *See State v. Moiser,* 738 S.W.2d 549, 562 (Mo.App.1987).

■ Even as a matter of preserved error, Jackson's *Batson* point would have no merit. What a prosecutor observes about a potential juror in voir dire, as well as what is said, may form a legitimate nondiscriminatory basis for exercising a peremptory strike. *State v. Weaver,* 912 S.W.2d 499, 509 (Mo.

banc 1995). In *Weaver,* our Supreme Court noted that the state's:

decision to strike [a venireperson] was not based solely on race or upon any assumptions about persons of [the venireperson's] race but was based upon the *way* [the venireperson] behaved and answered questions, that is, hesitation, lack of eye contact, flippancy and other intangibles observed only by those present in the courtroom. *Id.* [Our emphasis.]

Here, the state's restated reason for striking Phillips was for "the *way* she responded, people are people, . . . ." It is particularly telling that Jackson, who was present in the courtroom to observe the way Phillips responded to the state's question, did not respond to this explanation, apparently accepting it as plausible. We also find the explanation was plausible. Point denied.

We affirm.

RHODES RUSSELL, P.J., and SIMON, J., concur.