

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33318 |
| | ) | |
| MAURICE D. JONES, | ) | **Filed: May 13, 2015** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Circuit Judge

### AFFIRMED

Maurice D. Jones ("Defendant") appeals his convictions, following a jury trial, for first-degree assault and armed criminal action perpetrated against a male victim. *See* sections 565.050 and 571.015.[1]  Defendant claims he should receive a new trial because the trial court clearly erred in overruling his gender-based ***Batson***[2] challenges to two peremptory strikes used by the State to eliminate female panel members. Deferring to the trial court's superior position to detect bias, we find no clear error and affirm.

### Standard of Review and Governing Law

A party may not exercise a peremptory strike to remove a potential juror solely on the basis of gender. ***State v. Marlowe***, 89 S.W.3d 464, 468 (Mo. banc 2002). "[T]he substance

---

[1] Statutory references are to RSMo 2000 unless otherwise specified.  Rule references are to Missouri Court Rules (2014).
[2] ***Batson v. Kentucky***, 476 U.S. 79 (1986).

and procedures established by the **Batson** line of cases are equally applicable to challenges made to peremptory strikes based on gender bias." **State v. Hayden**, 878 S.W.2d 883, 885 (Mo. App. E.D. 1994). We review the denial of a **Batson** challenge for clear error.[3] **State v. Thurman**, 887 S.W.2d 411, 412 (Mo. App. W.D. 1994). A finding is clearly erroneous if we are definitely and firmly convinced that a mistake has been made. **Id**. We accord the trial court great deference on its findings of fact as they largely depend upon first-hand evaluations of credibility and demeanor. **State v. Bateman**, 318 S.W.3d 681, 687 (Mo. banc 2010).

A **Batson** challenge must proceed as follows:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable . . . group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear [gender]-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were [gender] motivated.

**State v. Parker**, 836 S.W.2d 930, 939 (Mo. banc 1992) (internal footnote and citations omitted).

A legitimate basis to exercise a peremptory strike may include the prosecutor's class-neutral observations, past experiences, and common sense. *See* **State v. Weaver,** 912 S.W.2d 499, 509-10 (Mo. banc 1995). Additionally, counsel may make "a subjective determination

---

[3] Respondent unpersuasively argues that Defendant is entitled only to plain error review under Rule 30.20 because he did not sufficiently challenge the prosecutor's proffered reasons for striking the venirepersons at the time he made his **Batson** challenge, citing **State v. Washington**, 288 S.W.3d 312, 314 (Mo. App. E.D. 2009), and **State v. Clark**, 280 S.W.3d 625, 628 (Mo. App. W.D. 2008). In the cited cases, the reviewing courts resorted to plain error review because the defendant either made no attempt to challenge the prosecutor's proffered reasons, **Washington**, 288 S.W.3d at 314, or added new claims of error on appeal. **Clark**, 280 S.W.3d at 628. Here, Defendant's response to the prosecutor's stated reasons was sufficient to preserve those particular arguments for our review. To the extent that Defendant now attempts to expand those prior arguments, he does not do so with an accompanying request for plain error review, and we decline such review. *See* **State v. Irby**, 254 S.W.3d 181, 188 (Mo. App. E.D. 2008) ("objection cannot be broadened by arguing a new theory on appeal"), and **State v. Morgan**, 366 S.W.3d 565, 586 (Mo. App. E.D. 2012) (no request for plain error review and exercise of such discretionary review declined).

based upon a wide variety of character and personality traits, including 'hunches.'" ***State v. Martin***, 291 S.W.3d 269, 277 (Mo. App. S.D. 2009). "A legitimate reason is not one that makes sense but one that does not deny equal protection." ***Weaver***, 912 S.W.2d at 509.

In challenging the proffered reasons as pretextual, the defendant must present evidence or a specific analysis that discredits the State's explanation; he cannot rely on mere conclusory allegations. ***State v. Johnson***, 930 S.W.2d 456, 460 (Mo. App. W.D. 1996). "There is rarely a simple litmus test for examining pretext. Rather, the trial court should take 'into account a variety of factors' '[i]n determining whether the defendant has carried the burden of proof and established the existence of purposeful discrimination.'" ***Bateman***, 318 S.W.3d at 690 (quoting ***Parker***, 836 S.W.2d at 939).

> Prior cases have identified a non-exclusive list of factors that may be relevant in any particular case. For example, a court also should look at "[t]he degree of logical relevance between the proffered explanation and the case to be tried in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment if the defendant is convicted...." *Parker*, 836 S.W.2d at 940. The prosecutor's "patterns of practice," e.g., questions and explanations and history of pretextual strikes, may be relevant, *Miller–El* [v. *Dretke*], 545 U.S. [231,] 233–34, 253 [(2005)]; *Parker*, 836 S.W.2d at 940, as may both the prosecutor's "demeanor" while engaging with venirepersons, [*State v.*] *Antwine*, 743 S.W.2d [51,] 65 [(Mo. banc 1987)], and the demeanor of excluded venirepersons. *Parker*, 836 S.W.2d at 940. "Objective factors bearing on the state's motive to discriminate on the basis of [gender], such as the conditions prevailing in the community and the [gender] of the defendant, the victim, and the material witnesses, are also worthy of consideration." *Id.*

*Id.* at 690-91 (footnote omitted).

**Facts and Procedural Background**

Defendant, who was accused of shooting Arjuna Green in the arm, does not challenge the sufficiency of the evidence supporting his convictions. As a result, we recite only those

3

facts relevant to the resolution of Defendant's points, and we present them in the light most favorable to the State. *See Martin*, 291 S.W.3d at 273.

Forty-five persons were empaneled as potential jurors. At the conclusion of *voir dire*, the State used all six of its peremptory strikes on female venirepersons, and defense counsel[4] made a gender-based ***Batson*** challenge.[5] The prosecutor's initial response was that he "didn't even put it together that the six people . . . were women[,]" and he asserted that gender "had nothing to do with it."

In regard to the two strikes challenged in Defendant's points relied on, the colloquy related to Venireperson No. 1 ("No. 1") was as follows:

| | |
|---|---|
| [Prosecutor]: | Your Honor, in asking the questions, just our observations of her and how she paid attention in court and reasons like that, just our general observations, we decided to strike her without thinking about her gender in any way, shape, or form, because – |
| THE COURT: | From the defense side on No. 1? |
| [Defense counsel]: | I'm not sure, Judge, what they mean by just her demeanor in court. |
| | Is there something specific? Did she frown at them? Did she roll her eyes? I mean, you could say that of everybody. I mean, everybody has a demeanor in court. |
| | What specific reason was her demeanor used by the State to -- to use a peremptory strike on her? |
| | Again, every juror has a demeanor. I – we just think that they should be required to tell us why they have stricken her with a peremptory strike with some specificity. |
| THE COURT: | I think they did, as specific as they can be. |

The following constituted the colloquy related to Venireperson No. 17 ("No. 17"):

---

[4] Both the State and Defendant were represented by multiple attorneys. We refer to them generally as "prosecutor" and "defense counsel."

[5] The prosecutor calculated that seven of the remaining panel members were female.

| | |
|---|---|
| [Prosecutor]: | And [No.]17, chose to strike, retired military. She didn't answer any questions,[6] and it was her age and being younger. Those were all factors we looked at with her. |
| | . . . . |
| THE COURT: | Okay. From the defense side? |
| [Defense counsel]: | I believe they said because of her age? Does that mean that they struck her because -- was she older or younger? |
| [Prosecutor]: | Younger. |
| [Defense counsel]: | What about her age? |
| THE COURT: | Younger. |
| [Defense counsel]: | Judge, there are several jurors that were younger that were not stricken, so I don't think that's a gender-neutral reason. |

After addressing each of the peremptory strikes, the prosecutor again stated that using all six on females was purely coincidental, and he said the State was willing to change a strike if asked to do so by the trial court. The trial court initially concluded that the State did not present a gender-neutral reason for striking Venireperson No. 14. The State withdrew that strike and struck a male venireperson instead. The trial court found that "there was a gender-neutral reason" for striking both Nos. 1 and 17. Following Defendant's peremptory strikes, the trial court identified the members of the jury by their numbers and also noted that it had "dealt with all the attorneys in this courtroom for a long time" and had "never seen anything discriminatory for [sic] any of the attorneys. It just turned out that [the State] struck six women."[7] Defense counsel stated that he had no objection to the manner in which the ***Batson*** hearing had been conducted.

---

[6] No. 17 did answer some questions during *voir dire* about prior juror service.

[7] The trial court also stated:

> Going back to the ***Batson*** challenge, I'll note that the defense did strike four women in their strikes. I do want to make a clear record that I was not finding that I thought that the State has done anything as far as a discrimination against women in picking the jury. Out of an abundance of caution, I asked them to not -- that I wasn't going to allow them to strike No. 14. They then selected another juror for their strike.

It is impossible to determine from the record the exact number of females who sat as jurors in this case. It appears that at least three of the jurors may have been female based upon three traditionally female

5

**Analysis**

In his first point, Defendant alleges the trial court erred in overruling his ***Batson*** objection concerning No. 1 because the State failed to articulate a reasonably specific gender-neutral reason for the strike. In his second point, Defendant argues that the trial court erred in overruling his ***Batson*** objection concerning No. 17 because the prosecutor's stated justifications were implausible. Both of Defendant's points fail for the same reason, and we address them together.

The second step of a ***Batson*** challenge "does not demand an explanation that is persuasive, or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [gender] neutral.'" ***Purkett v. Elem***, 514 U.S. 765, 767-68 (1995) (quoting ***Hernandez v. New York****, 500 U.S. 352, 360 (1991)). The ***Batson*** case's admonition that "the proponent of a strike 'must give a clear and reasonably specific explanation . . . related to the particular case to be tried' . . . . was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." ***Id.*** at 768-69 (quoting ***Batson***, 476 U.S. at 98 and n.20 (additional quotation omitted)).

The prosecutor's statement that he struck No. 1 because of his general observations of her demeanor and how she paid attention is facially valid. ***State v. Miller***, 162 S.W.3d 7, 16 (Mo. App. E.D. 2005) ("[i]nattentiveness, demeanor and

---

names given during the polling of the jury after the verdict and from comments made by the trial court and the prosecutor about the number of women left on the panel before Defendant made his peremptory strikes. Defense counsel did not contest the number of females left on the panel as stated by the prosecutor. In any event, the presence of women on the jury does not control the analysis, as striking a potential juror based solely upon his or her gender is impermissible. *Cf. **Parker***, 836 S.W.2d at 940 ("[t]he removal of even one African-American person from the venire for racial reasons constitutes a violation of the equal protection clause regardless of the racial composition of the selected jury").

6

attitude are proper explanations for exercising a peremptory challenge").  The same is true for the reasons of employment, attitude, and relative age as stated by the prosecutor in addressing No. 17.  ***State v. Winters***, 949 S.W.2d 264, 268-69 (Mo. App. S.D. 1997) (concerning age and prior employment in military); ***Miller***, 162 S.W.3d at 16 (concerning attitude).  Although a lack of detail or plausibility in a prosecutor's facially valid explanation might later serve to undermine the persuasiveness of a prosecutor's proffered rationale, persuasiveness is not yet at issue in this second step of a ***Batson*** challenge.  ***Purkett***, 514 U.S. at 768-69.

The third step of a ***Batson*** challenge places the burden upon the defendant to present affirmative evidence that the prosecutor's facially valid reasons were actually pretextual.  ***State v. Davis***, 894 S.W.2d 703, 707 (Mo. App. W.D. 1995).  And the trial court was not obligated to find that Defendant had "established the existence of purposeful discrimination" as to either venireperson here, especially since Defendant presented no evidence challenging or specific analysis discrediting the prosecutor's statements concerning No. 1's "attention in court" or No. 17's status as "retired military."  *See* ***Bateman***, 318 S.W.3d at 690, and ***Johnson***, 930 S.W.2d at 460.

Further, the trial court's statements that it had never before "seen anything discriminatory for any of the attorneys" and that it "just turned out that they struck six women" indicate it found "[t]he prosecutor's patterns of practice" relevant and contrary to a finding of purposeful discrimination.  *See* ***Bateman***, 318 S.W.3d at 691 (quotation omitted).  When we defer -- as we must -- to these factual findings of the trial court, we are not definitely and firmly convinced that the trial court made a mistake in rejecting Defendant's ***Batson*** challenge.

7

Defendant's points are denied, and his convictions are affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

GARY W. LYNCH, J. - CONCURS