STATE of Missouri, Respondent,

v.

Wilson Shelby CAMDEN, Jr., Appellant.

Wilson Shelby CAMDEN, Jr., Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 43336, WD 44809.

Missouri Court of Appeals,
Western District.

Sept. 15, 1992.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

FENNER, Presiding Judge.

Appellant, Wilson Shelby Camden, Jr., appeals from his convictions for possession of a controlled substance, § 195.020, RSMo 1986[1] (now repealed) and possession of an explosive weapon, § 320.136 and § 571.020. Camden also appeals the denial of his Motion to Vacate Judgment and Sentence under Rule 29.15. Taken in the light most favorable to the verdict, the evidence was as stated hereafter.

On November 25, 1987, a group of law enforcement officers executed a search warrant for narcotics on the eighth floor of the Governor Hotel in Jefferson City, Missouri. Camden was present on the eighth floor of the hotel in room 806 at the time the search warrant was executed. Camden was using room 806 as his bedroom. The officers also found an M–100 explosive and a bottle of Inositol powder in room 806.

1. All statutory references are to RSMo 1986, unless otherwise stated.

The M–100 was five inches long by one and a quarter inches wide, containing 201 grains of flash powder. The M–100 was on top of the television along with a cup containing some marijuana and rolling papers. Inositol is a substance commonly used for cutting cocaine and it was found on a nightstand.

Room 801 was a locked conference room with a conference table and chairs, some storage boxes, and a file cabinet. Underneath the bottom drawer of the file cabinet the officers found a men's shaving kit, containing a plastic bag of cocaine, two baggies of marijuana and an assortment of drug paraphernalia. In the file cabinet the officers found several file folders containing various business records on which Camden's name appeared. Among the business records were papers from BB's lounge, a bar operated by Camden downstairs in the Hotel Governor. On a small table in room 801 was a set of electronic metric scales, a one kilogram weight and a two kilogram weight.

After Camden was placed under arrest, he was allowed to retrieve some money. Camden retrieved money from a pants pocket and from a chest of drawers in room 806. Camden then went into room 807 where he retrieved some cash from a three-layered stack of file trays sitting on a desk.

On the desk in room 807 the officers found in the file tray a glass tube for snorting cocaine with cocaine residue inside the tube. Also on the desk was a mirror of the type commonly used in the preparation of cocaine. On top of the television in room 807 was a book entitled Cocaine Consumer's Handbook. Also on the desk in room 807 was a set of keys containing the key to room 801, the locked room where the shaving kit, file cabinet and scales were found.

Room 804 had the appearance of a meeting room. There was a sign on the stairway door to the eighth floor which advised that no one was allowed on the eighth floor without the permission of room 804.

Room 803 was set up as an office. There were numerous business and telephone records in room 803 with Camden's name on them as well as the name of his company, Will Can Management. There was also a receptionist area near the elevators, with a desk, a chair, and a telephone. When an officer answered the phone, a caller asked for "Willie."

Room 802 was a bedroom recently occupied by a woman named Gloria Berhorst. Officers found a few items of discarded clothing and a few items of drug paraphernalia with trace amounts of plant material and trace amounts of cocaine.

Room 805 was a bedroom occupied by a woman named Teresa Goslin and her daughter. In that room the officers found "items of narcotic value."

Camden admitted that the scales found in room 801 were his, but said that they were used to weigh packages being mailed out. However, the post office weighs mail solely in English units while Camden's scales were strictly metric. Camden asked the officers if the narcotics found were cocaine or marijuana and admitted that he had some marijuana on his television set.

In his first point on appeal, Camden argues that the evidence failed to show that he was aware of the presence and nature of the cocaine and that he was intentionally in possession of it. Appellant argues that the evidence failed to show that he had exclusive use of the rooms or any other part of the eighth floor of the Governor Hotel where the contraband was found.

 To assess the sufficiency of the evidence to support a conviction, an appellate court must accept as true all evidence tending to support a finding of guilt, together with all reasonable inferences supporting the verdict, while disregarding any contrary evidence. *State v. Adkins*, 800 S.W.2d 28, 30 (Mo.App.1990). Where evidence supporting a conviction is entirely circumstantial, the facts and circumstances to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of innocence. *Id.*

 Appellant was convicted of possession of cocaine in violation of § 195.020

(now repealed). To support a conviction for possession of controlled substance under § 195.020, there must be evidence that the defendant knowingly and intentionally possessed the substance, and was aware of its presence and nature.[2] Constructive possession is sufficient where joint control exists, if other facts buttress an inference that the defendant had knowledge of the presence of the substance. *Id.* Defendant's access to the area where drugs were found is an incriminating fact not destroyed because another had access to the area. *Id.*

■ It was not necessary for the evidence to show that Camden had exclusive access to the areas where the contraband was found. There was other evidence to show that Camden had knowledge of the presence of the cocaine.

The record reflects that Camden had converted the eighth floor of the hotel into a living quarters for himself and others invited there by him as well as an office for his business interests. Camden admitted to knowledge of marijuana in the room he was sleeping in, room 806. Camden also retrieved money from a file tray in room 807 where a tube for snorting cocaine was located. The tube was also shown to contain cocaine residue. On the desk where the filing tray was located there was also a mirror of the type used in the preparation of cocaine as well as keys to room 801. Also on the television in room 807 was a book entitled Cocaine Consumer's Handbook.

In room 801 underneath the file cabinet containing Camden's business records was the men's shaving kit which contained 24.01 grams of cocaine and the scales.

Camden admitted he knew there was marijuana on the premises and circumstantially indicated his awareness of cocaine by asking the officers if they found any cocaine.

The facts presented were consistent with Camden's having been in possession of the cocaine and inconsistent with any reasonable theory of his innocence.

Camden's first point is denied.

■ In his second point, Camden argues that the evidence failed to show that he knew the M–100 was an explosive weapon. Camden does not challenge that he was in possession of the M–100 or that it is an explosive weapon.[3]

On this charge Camden was convicted under § 571.020.1(1), which provides that a "person commits a crime if he knowingly possesses ... an explosive weapon." The statute forbids knowingly possessing an explosive weapon, not just possessing what one knows to be an explosive weapon.

A person " 'acts knowingly' when he is aware of the nature of his conduct." § 562.016.3(1); *State v. Dowdy*, 724 S.W.2d 250, 252 (Mo.App.1986). In acting "knowingly" a person is aware that he is engaging in certain conduct which happens to amount to a crime. *Id.*

The M–100 was an explosive device and Camden knew that he was in possession of the M–100. The state met its burden by showing that Camden knew he possessed what was shown to be an explosive device.

Camden's second point is denied.

■ In his third point, Camden argues that the contraband seized should have been suppressed "because the search warrant was overbroad and was based upon a search incident to an overbroad arrest warrant." Camden argues that the warrants in question were overbroad because they described the premises to be searched as "the 8th floor of the Governor Hotel."

On October 20, 1987, some law enforcement officers went to the eighth floor of the Governor Hotel to serve an arrest war-

---

2. Possession is currently defined within the Comprehensive Drug Control Act of 1989, §§ 195.005–195.425, RSMo Supp.1991. Under the new law, one has actual or constructive possession of a substance if he has the knowledge of the presence and illegal nature of the substance; constructive possession also requires the power and intention to exercise dominion or control over the substance. § 195.010(33), RSMo Supp.1991.

3. The evidence showed that the M–100 would blast a railroad tie a distance of 100 feet.

rant on Teresa Goslin. Camden was on the eighth floor when the warrant was served on Ms. Goslin.

On November 23, 1987, an arrest warrant for appellant was issued pursuant to a charge against him of possession of controlled substances. One of the officers who had served the arrest warrant on Teresa Goslin executed an affidavit stating that he had observed Camden on the eighth floor of the Hotel; he observed envelopes addressed to "Wilson Camden, Eighth Floor, Governor Hotel"; while on the eighth floor a phone on a desk in a common area rang on two different occasions with one caller asking for Wilson Camden and the other asking for Willie Camden. An investigator for the prosecutor's office also executed an affidavit stating that he had received information from an employee of the Governor Hotel that Camden had been living on the eighth floor of the Governor Hotel on a continuous basis since August, 1987, and that Camden had access to the entire eighth floor.

Based upon the affidavits received, a search warrant was issued authorizing the search and seizure of a person for whom a valid felony arrest warrant was outstanding, Camden.[4] The warrant described the premises to be searched as "the 8th floor of the Governor Hotel."

Upon executing the arrest warrant, the officers found Camden in his bedroom, room 806. The officers made a protective sweep of the eighth floor and observed several items of contraband throughout the premises. Three officers filed affidavits recounting their observations of contraband and a search warrant authorizing a search of the eighth floor for controlled substances was issued on the same day that the arrest warrant was issued. The search warrant authorized a search "on the eighth floor of the Governor Hotel occupied by one Wilson Camden, Jr." As previously discussed herein, several items of contraband were recovered.

Camden argues that the description of the premises in the arrest warrant was overbroad, rendering the arrest warrant invalid and tainting all evidence recovered from the eighth floor as fruit of the poisonous tree.

Under § 542.276.6(5), a search warrant is required to identify the place to be searched "in sufficient detail and particularity that the officer executing the warrant can readily ascertain ... what he is to search." A search warrant is invalid if it does not describe the place to be searched with sufficient certainty. § 542.276.10(5).

Camden argues that the eighth floor consisted of multiple dwelling units, that he was not the sole occupant of the eighth floor and therefore the arrest warrant did not describe the place to be searched with sufficient certainty. However, the affidavits in support of the arrest warrant indicated that Camden made use of the entire eighth floor as his residence and that he had access to all of the rooms there. Camden's mailing address was "Eighth Floor, Governor Hotel", Camden received telephone calls on a desk in a common area, and he discarded his mail in the common area.

The affidavits in support of the arrest warrant showed that Camden exercised control over the entire eighth floor of the hotel. Under these circumstances the arrest warrant did not lack sufficient certainty.

Camden's third point is denied.

█ In his fourth point, Camden argues that the trial court erred in overruling his motion to require the state to give a racially neutral explanation of its peremptory strike of venireperson Hayes, the only black person on the venire panel. Following his Batson objection, Camden pointed out that Hayes, the only black venireperson had been peremptorily stricken by the state. The record reflects that Camden apparently attempted to argue that, due to his dark complexion, the prosecutor was

---

4. This warrant is referred to hereinafter as the arrest warrant to distinguish it from the second search warrant authorizing a search of the eighth floor of the Governor Hotel.

intentionally trying to prevent blacks from serving as jurors.

Camden based his objections on *Batson v. Kentucky*, 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986), wherein the United States Supreme Court held that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race. In *Batson*, the Court recognized that a black defendant is denied equal protection of the law when the State tries him before a jury from which members of his own race have been purposefully excluded. *Id.* at 85, 106 S.Ct. at 1716–17. It should be noted that Camden was not a member of a cognizable racial group, the stricken venireperson was black and was the only black member of the venire panel.

However, in *Powers v. Ohio*, — U.S. ——, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991), the United States Supreme Court removed the requirement of racial identity between the objecting defendant and the excluded juror as a relevant precondition for a *Batson* challenge. In so doing, the Court focused on the rights of jurors and stated that "[a]n individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race." *Id.*

The issue raised by Camden was recently considered and decided by the Missouri Supreme Court in *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992) and *State v. Starks*, 834 S.W.2d 197 (Mo. banc 1992). In *Parker*, the court set forth new procedures for trial courts to follow when confronted with a *Batson* challenge by a defendant. The purpose articulated by the court in *Parker* was an effort to alleviate the confusion which occurred in the aftermath following the decision of *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987).

In *Parker*, 836 S.W.2d at 939, the court held that once a defendant makes a timely *Batson* objection with regard to a specific venireperson struck by the state and identifies the cognizable racial group to which the venireperson belongs, the trial court must require the state to offer race-neutral explanations for the challenged strikes. The court must then decide from the totality of the circumstances of the case whether the defendant has established purposeful discrimination. *Id.* 836 S.W.2d at 940.

The record reflects that once Camden raised his *Batson* objection as to venireperson Hayes and identified Hayes as the only black member of the venire panel, a lengthy colloquy took place regarding the nationality of two other jurors, but the prosecutor was not required to offer a race-neutral explanation for the peremptory strike of Hayes. The apparent purpose of the discussion following the objection was an attempt by the prosecutor to show the trial court that Camden had failed to make a prima facie showing of discrimination, the same argument made by the state on appeal. However, as held by the court in *Parker*, "[t]he establishment of a prima facie case by a defendant is of no independent constitutional significance." *Id.* 383 S.W.2d at 938. Further, the court stated that "[t]he *Batson* prima facie case requirements may be significantly altered, or even completely eliminated, without offending the Constitution." *Id.* (citations omitted). Finally, the court held, "[t]he state, therefore, has no basis for insisting upon the opportunity to challenge the defendant's prima facie case before providing the court with race-neutral explanations." *Id.*

Because the trial court failed to require an explanation by the prosecutor for the striking of venireperson Hayes, and in view of the recent decisions of the Missouri Supreme Court, by which this court is bound, this cause must be remanded for an evidentiary hearing as provided in *Parker*.

■ In his fifth point, Camden argues that the trial court erred in instructing the jury pursuant to MAI–CR3d 302.04 defining reasonable doubt. Camden argues that the instruction given, patterned after MAI–CR3d 302.04, by defining "proof beyond a reasonable doubt" as "proof that leaves

you firmly convinced of the defendant's guilt" allowed the jury to find him guilty based on a degree of proof that is below that required by due process.

In *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), the Missouri Supreme Court held that the "firmly convinced" language is synonymous with "beyond reasonable doubt" and properly instructs the jury in evaluating the evidence and making a determination of guilt or innocence.

Camden's fifth point is denied.

In his sixth and final point, Camden challenges the denial of his motion pursuant to Rule 29.15. In this point Camden argues that trial counsel was ineffective for failing to investigate and test for the presence of Inositol as a cutting agent in the cocaine he was convicted of possessing.

In support of his motion Camden had the cocaine he was convicted of possessing tested for Inositol. The test revealed that there was no Inositol present. Camden argues that if trial counsel would have investigated and presented this evidence at trial it would have negated any implication that the Inositol found in his bedroom was used by him as a cutting agent for cocaine.

█ Appellate court review of the denial of a Rule 29.15 motion is confined to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(j); *State v. Bogue*, 788 S.W.2d 772, 775 (Mo.App.1990). A motion court's findings and conclusions are deemed clearly erroneous only if after reviewing the entire record the appellate court is left with a definite and firm impression that a mistake has been made. *Id.*

█ To establish ineffective assistance of counsel, appellant must show both (1) that his attorney failed to conform his representation to the degree of skill, care and diligence of a reasonably competent attorney under similar circumstances; and (2) that through such failure appellant was prejudiced. *Hogshooter v. State*, 681 S.W.2d 20, 21 (Mo.App.1984), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is

a strong presumption that trial counsel's conduct was proper. *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065. Furthermore, to prove prejudice from trial counsel's conduct one must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

█ The state never argued that the cocaine found was cut with Inositol. The state argued that the presence of Inositol was circumstantial evidence, together with all of the other evidence, to support it's theory that Camden was actively involved with and knowledgeable of cocaine. Camden fails to show that trial counsel's conduct was less than competent or how he was prejudiced by counsel failing to show that Inositol was not present in the cocaine he was convicted of possessing. Camden has certainly not shown that but for the absence of this evidence that there is a reasonable probability that the result of his trial would have been different.

The judgments of the trial court overruling Camden's motion to require the state to give a racially neutral explanation for its peremptory strike of venireperson Hayes is reversed and the cause is remanded for an evidentiary hearing consistent with this opinion. The judgments of the trial court and the motion court are, in all other respects, affirmed.

All concur.