**STATE of Missouri, Respondent,**

v.

**Jerry PITTS, Appellant.**

**No. 60488.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 4, 1993.

John Klosterman, Susan K. Eckles, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his convictions for unauthorized use of a weapon, possession of marijuana, and driving while license revoked. We affirm.

Defendant does not challenge the sufficiency of the evidence. Therefore, only a brief recitation of the facts is necessary. On May 11, 1990, two police officers observed Defendant drive away from a local bar. They followed Defendant and pulled him over, because they knew his license had been revoked. A subsequent search of Defendant revealed a revolver in his waistband. An inventory search of the vehicle revealed three bags of marijuana in the front seat.

On July 9, 1990, Defendant was charged by information with one count of unlawful use of a weapon, one count of misdemeanor possession of marijuana, and one count of driving while license revoked. His trial began on June 3, 1991, and the jury convicted him of all three counts. On July 2, 1991, the trial court sentenced Defendant pursuant to § 558.016, RSMo Supp.1992, to concurrent terms of three years' imprisonment for unlawful use of a weapon, six months' imprisonment for possession of marijuana, and six months' imprisonment for driving while license revoked.

For his first point, Defendant argues the trial court erred in sentencing him as a persistent misdemeanor offender pursuant to § 558.016. Defendant asserts the application of § 558.016 is an *ex post facto* law in violation of the fourth, fifth, sixth, and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. The crimes in question were committed on May 11, 1990. Defendant was tried on June 3–4, 1991, and the court sentenced him on July 2, 1991. In the interim, on August 28, 1990, amendments to § 558.016 went into effect. These amendments allow the judge, rather than the jury, to sentence persons who are "persistent misdemeanor offenders." § 558.016.

Two elements must be present to establish an *ex post facto* violation: (1) the law must be retrospective, and (2) it must disadvantage Defendant. *State v. Hillis*, 748 S.W.2d 694, 697[10] (Mo.App.1988). Clearly, the amendment to § 558.016 is retrospective as to Defendant, because it was not enacted until after the crimes were committed. However, Defendant was not disadvantaged by this retrospective application.

A law will disadvantage Defendant if it: (1) declares acts to be criminal which were not criminal when committed; (2) aggravates a crime, or makes it greater than it was; (3) increases punishment of a crime; or (4) alters the rules of evidence to allow less or different testimony. *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715,

2719[2], 111 L.Ed.2d 30 (1990); and *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). Further, "no *ex post facto* violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Miller,* 482 U.S. at 433, 107 S.Ct. at 2452–53[4], *quoting Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

Defendant argues a change from jury sentencing to judge sentencing does increase his punishment, and further, it is not merely procedural. Defendant relies primarily on *Hillis,* 748 S.W.2d at 694, to support his argument. In *Hillis,* the legislature enacted § 558.019 after the defendant was charged but before he was tried and sentenced. Section 558.019 allows the court to sentence a defendant as a Class X offender and requires him or her to serve a minimum of eighty percent of his or her sentence before eligible for parole. § 558.-019, RSMo Supp.1992. This court held § 558.019 was an *ex post facto* law as applied retrospectively to the defendant, because changes in parole eligibility disadvantaged him by potentially increasing his punishment. *Id.* at 697–98[12]; *See also, State v. Lawhorn,* 762 S.W.2d 820, 824–26[5] (Mo. banc 1988); and *State v. McCoy,* 748 S.W.2d 809, 811[4] (Mo.App.1988).

We find *Hillis* distinguishable. Parole eligibility constitutes part of the punishment of the crime and minimum prison terms clearly operate as a disadvantage to the defendant by increasing his or her time in prison. *Hillis,* 748 S.W.2d at 697–98[12]. The persistent misdemeanor amendment to § 558.016 does not operate as an increase in Defendant's prison term. It merely removes sentencing from the jury and gives it to the judge. The judge is still bound by the terms of imprisonment authorized in § 558.011.

In *Heistand v. State,* 740 S.W.2d 282, 287–88[4] (Mo.App.1987), the court found the retrospective application of §§ 557.036 and 558.016.2, RSMo 1986, to sentence the defendant as a prior offender was not *ex post facto.* The court reasoned the statutes did not increase punishment, but rather, merely allowed the judge, not the jury, to assess the punishment. *Id.* It was merely a procedural change. *Id.; See also, State v. Griffin,* 339 S.W.2d 803, 806[8] (Mo.1960); *State v. Morton,* 338 S.W.2d 858, 863[7, 8] (Mo.1960). Furthermore, our courts have repeatedly held there is no constitutional right to jury sentencing. *See, State v. Cline,* 808 S.W.2d 822, 826[6] (Mo. banc 1991); and *State v. Griffin,* 756 S.W.2d 475, 487[15] (Mo. banc 1988). Point denied.

In Point II, Defendant contends the trial court erred in denying his motion to quash the jury panel and motion for new trial when the prosecutor used one of his peremptory strikes against a black venireperson in violation of *Batson v. Kentucky.*

Our review of Defendant's *Batson* challenge is limited to finding the decision clearly erroneous. *Hernandez v. New York,* — U.S. —, 111 S.Ct. 1859, 1868–1869[11], 114 L.Ed.2d 395 (1991); *State v. Davis,* 835 S.W.2d 525, 527[2] (Mo.App. 1992). In making that determination, we give extreme deference to the trial court's finding because it rests largely on credibility. *Hernandez,* 111 S.Ct. at 1868–1869[11]; *Davis,* 835 S.W.2d at 527[1]. In addition, Defendant bears the burden of showing the decision of the trial court was clearly erroneous and the prosecutor's explanations were merely pretextual. *State v. Antwine,* 743 S.W.2d 51, 63–64[13] (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

After the prosecutor exercised his peremptory strikes, defense counsel made a timely objection to those strikes pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985). The following colloquy was then had concerning Venireperson Marble:

THE COURT: ... The next strike by the State was on Page 5, I believe that is a black female, LaDoris J. Marble, so why did you strike her?

MR. FELLOWS: She appeared to have a bad attitude as I would characterize it

and also when defense counsel asked whether or not they believe that police officers can lie she let out a fairly audible 'uh-huh' anyway so ...

MS. RENO: Your Honor, defense counsel would like to respond to that. I think a lot of people voiced vocally. I did not hear Ms. Marble respond any louder, I didn't note it to be any more ruder (sic) or whatever than anybody else's.

\* \* \* \* \* \*

THE COURT: When that question was asked I heard fairly audible responses from a number of people. Now I didn't notice which once (sic) made the audible responses. I'm not going to say on this record I saw Ms. Marble in particular or individually make any response. There was a number of very loud, audible responses to that question by several individuals.

MS. RENO: Which remain on the jury.

THE COURT: That may well be because I myself am not—As I'm saying, I did not notice who it was. There was a number of people made loud, audible responses that I did hear. I did not note those on my jury sheet. I have no reason to believe that she did not if counsel for the State says he specifically noted that she did. If she did that is certainly a legitimate hunch.

The record does not reveal which venirepersons did make comments to defense counsel's question about police officers lying. However, "the prosecutor is permitted to exercise his peremptory challenges on the basis of his legitimate 'hunches' and past experiences so long as racial discrimination is not the motive." *State v. Blankenship*, 830 S.W.2d 1, 16[22] (Mo. banc 1992); *See also, State v. Kempker*, 824 S.W.2d 909, 911[2] (Mo. banc 1992); and *State v. Metts*, 829 S.W.2d 585, 587–88[2] (Mo.App.1992). Point denied.

Defendant finally asserts error in the submission of Instruction Number 4, modeled after MAI–CR3d 302.04, defining reasonable doubt. The constitutionality of this instruction has been challenged countless times and found to be within the confines of *Cage v. Louisiana*, 498 U.S. 39,

111 S.Ct. 328, 112 L.Ed.2d 339 (1990). We are again constrained by the Supreme Court's decision in *State v. Griffin*, 848 S.W.2d 464, 468–69 (Mo.banc 1993). Point denied.

Judgment affirmed.

AHRENS, P.J., and REINHARD, J., concur.