STATE of Missouri, Plaintiff/Respondent,

v.

Lawrence DANIELS,
Defendant/Appellant.

Lawrence DANIELS, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60230, 61912.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 4, 1993.

S. Paige Canfield, Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Lawrence Daniels guilty of first degree assault, in violation of § 565.050 RSMo 1986, and armed criminal action, in violation of § 571.015 RSMo 1986. The trial court found Daniels to be a class X offender and sentenced him to fifteen years imprisonment on the assault count and twenty years imprisonment on the armed criminal action count, the sentences to be served concurrently. Daniels filed a motion for post-conviction relief under Rule 29.15 which was denied after an evidentiary hearing. Daniels appeals both the judgment of the trial court and the order of the motion court.

On his direct appeal Daniels contends that the trial court erred in overruling his *Batson* motion without requiring the state to give reasons for its strikes. He also contends the trial court erred in refusing to instruct the jury on presence at or near the scene, in giving MAI–CR3d 302.04 on reasonable doubt, and in denying the motion to quash or to stay proceedings based on the composition of grand and petit juries in St. Louis. We remand the case to the trial court for further proceedings on the *Batson* motion and affirm with respect to the other issues raised.

In his appeal from the order of the motion court, Daniels asserts that the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing. In his motion he claimed he was denied his right to effective assistance of counsel when his attorney failed to disqualify the trial judge after the trial judge disclosed that he knew a state's witness. We affirm the order of the motion court.

## DIRECT APPEAL

The sufficiency of the evidence is not in dispute. The evidence at trial revealed that Illinois state trooper, Michael Terrell, began pursuing Daniels, the driver of a brown Cadillac, after he ran a flashing red stop light in Illinois. Trooper Terrell activated his emergency lights. Daniels failed to stop and headed for the Dr. Martin Luther King Bridge. Martez Williams, a passenger in Daniel's car, fired shots at Trooper Terrell while both vehicles were near a toll booth on the bridge approach. Trooper Terrell continued to pursue Daniels who continued towards the bridge. Daniels and Williams stopped at the base of the bridge on the Illinois side and both Daniels and Williams left their car and fired shots at Trooper Terrell. Daniels used a hand gun and Williams used a rifle. They then returned to their car and crossed the bridge into Missouri. Trooper Terrell followed them into Missouri. As they reached the Missouri side of the bridge, Williams shot at Trooper Terrell again. After a chase on Interstate 70, Daniels exited from the highway and stopped at an intersection. When Trooper Terrell reached the intersection, one of the car's occupants fired at him again. Trooper Terrell, joined by a St. Louis police officer, then pursued Daniels and Williams through parts of the City of St. Louis. Daniels and Williams slowed their car down, jumped out and ran from the police officers. After Daniels was apprehended, the officers observed a rifle and handgun on the floor of Daniels' Cadillac.

For his defense Daniels testified that his passenger had forced him to drive at gunpoint and that he did not fire any shots at Officer Terrell. At his request the jury was instructed on duress.

For his first point on direct appeal, Daniels contends that the trial court erred in overruling his *Batson* motion without considering or requiring the state to provide reasons for its use of three peremptory strikes against black venirepersons. The state agrees that this case must be remanded for an evidentiary hearing on the *Batson* motion to determine whether the prosecutor used the state's strikes in a discriminatory manner. *State v.*

*Parker*, 836 S.W.2d 930 (Mo. banc 1992). On remand the procedure outlined in *Parker* must be followed. In considering whether purposeful discrimination has occurred, the trial court should take into account the relevant factors set out in *Parker* at 939–40. The trial court shall certify to this court a record of its proceeding and its finding. *State v. Aziz*, 844 S.W.2d 531, 535 (Mo.App. 1992).

For his second point Daniels asserts that the trial court erred in refusing to give his proffered jury instruction B. Defendant's Instruction B reads as follows:

> The presence of a person at or near the scene of an offense at the time it was committed or attempted is alone not sufficient to make him responsible for the offense, although his presence may be considered together with all the evidence in determining his guilt or innocence.

This instruction is modeled on MAI–CR3d 310.08, Presence At Or Near The Scene.

■ The "presence" instruction is based on the legal concept that mere presence at the scene of a crime is insufficient to establish accessory liability. As codified in this state, a person is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit an offense." Section 562.041(2) RSMo 1986. Presence alone is insufficient to sustain a conviction under this theory. *State v. Roper*, 819 S.W.2d 384, 385 (Mo.App.1991). However, presence coupled with other incriminating evidence can be sufficient to sustain a conviction. *Id.; State v. Oliver*, 791 S.W.2d 782, 788 (Mo.App.1990).

■ MAI–CR3d 310.08 must be given, if applicable, only if the verdict directing instruction is patterned after MAI–CR3d 304.-04, the accessorial liability instruction, and if requested in proper form by either party. MAI–CR3d "How to Use This Book—Overview"; MAI–CR3d 310.08, Notes on Use 2. This instruction is not required unless acces-

sorial liability is in question. *State v. Bland,* 757 S.W.2d 242, 246 (Mo.App.1988).

Daniels argues that accessorial liability was in question because there was evidence of a second person in Daniels' car and because the jury was instructed on accessorial liability. The jury was instructed that it could find Daniels guilty if it found that the assault occurred and that "with the purpose of promoting or furthering the commission of that assault in the first degree, the defendant acted together with or aided another person in committing that offense...."

██ Daniels is correct that accessorial liability was in question in this case. However, not every situation involving accessorial liability requires the giving of the "mere presence" instruction. *See* MAI–CR3d 304.-04, Notes on Use 12 ("Situations involving accessorial liability *may* also involve the giving of an instruction on 'mere presence.'") (emphasis added). A defendant is entitled to an instruction on any theory which the evidence tends to establish. *State v. Thomas,* 674 S.W.2d 131, 137 (Mo.App.1984). Daniels asserts that there was affirmative evidence from which the jury could find he was simply at the scene of the crime but was not participating in the crime. Defendant does not refer us to any specific evidence. Further, defendant ignores the fact that his own evidence, given in support of his defense of duress, established that he participated in the physical acts which would constitute accessorial liability.

Daniels testified that Williams and another man put the firearms in his car and Williams instructed him to drive. He testified that he purposefully went through the red light to attract the attention of the police, that Williams compelled him to continue driving by threatening him with one of the firearms, and that Williams shot at the trooper from the car on several occasions as they crossed the bridge into Missouri and drove through St. Louis.

Thus, Daniels admits that he physically assisted the shooting by driving the person he contends did the shooting and by driving

the car away from the trooper who pursued them from Illinois into Missouri and through St. Louis. Daniels' evidence presented the jury with the question of whether Daniels was acting voluntarily or under duress, not whether he acted at all. The jury could not convict on "mere presence" when Daniels' own evidence established that he physically participated in the crime. The evidence did not support giving the "presence" instruction. The trial court did not err in denying defendant's Instruction B.

██ In his fourth point[1] Daniels contends that the trial court plainly erred by submitting MAI–CR3d 302.04 defining reasonable doubt. This point has been thoroughly and repeatedly addressed and rejected by the Missouri Supreme Court. *State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Missouri Supreme Court. *State v. Weems,* 800 S.W.2d 54, 58 (Mo.App.1990).

Defendant argues that the decision of the United States Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) invalidates MAI–CR3d 302.04's definition of proof beyond a reasonable doubt. The Missouri Supreme Court has explicitly held that MAI–CR3d 302.04 meets the constitutional requirements for a definition of reasonable doubt and is unlike the charge in *Cage* which equated proof beyond a reasonable doubt with a lower standard. *State v. Griffin,* 848 S.W.2d 464, 468–69 (Mo. banc 1993). Point four is denied.

For his fifth point Daniels asserts the trial court erred in denying his motion to quash the indictment or in the alternative to stay the proceedings because grand and petit jury selection procedures in the City of St. Louis denied Daniels a jury which reflected a fair cross section of the citizens. Section 494.400 RSMo (Cum.Supp.1989) requires that all persons qualified for grand or petit jury service be selected at random from a fair cross section of the citizens of the City of St. Louis.

██ Daniels was tried on a substitute information issued August 10, 1990, which re-

---

1. Daniels' third point relates to his appeal from the order denying post-conviction relief and will

be separately addressed in that section of this opinion.

placed the April 19, 1990 grand jury indictment. Daniels does not challenge the substitute information. Therefore, any error in the earlier grand jury indictment is moot. *State v. Landers*, 841 S.W.2d 791, 793 (Mo. App.1992).

Daniels also contends the City of St. Louis did not use random methods to choose petit jury panels when he was tried. He argues that the use of driver's license lists and voter registration lists as source lists for petit juries resulted in under-representation of young persons and minorities.

Jury selection procedures for the City of St. Louis were challenged by a motion to stay all jury trials in another criminal case. All open criminal cases in the City, including the present case, were consolidated for the purposes of that motion. The Honorable Ronald M. Belt held a hearing on that motion on October 10 and 13, 1990. Counsel for the state and the defense agreed to incorporate the hearing transcript and order into all open criminal cases.

On October 16, 1990, Judge Belt ordered all jury trials in the circuit stayed. Although he specifically found no under-representation of racial, gender, or age groups, he did find the procedures used in granting juror continuances resulted in a non-random selection of some juror panels. This impropriety was immediately corrected by the Board of Jury Commissioners whereupon Judge Belt lifted the stay of jury trials.

In *Landers*, we found with respect to the evidence before Judge Belt:

> [D]efendant's expert witness reviewed age, sex, and race data of 141 jury panels in 1989 and 1990. Analyzing the data over this entire period he concluded that representation of females did not differ significantly from what you would expect by chance. He also testified there were "no problems" with race and that blacks were not underrepresented. Finally, he testified that young people, age 21–29, were underrepresented by 6% but that under-representation of less than 10% was insignificant.

841 S.W.2d at 793. We held that "the evidence amply supports Judge Belt's finding of

no under-representation of racial, gender, or age groups" and found the trial court did not err in denying the motion to quash. *Id.* For the same reasons, point five in this appeal is denied.

The direct appeal is remanded for a *Batson* hearing. In all other respects the judgment of the trial court is affirmed.

## POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, Daniels asserts the motion court erred in denying his motion for post-conviction relief because he was denied effective assistance of counsel at trial. He asserts that his privately retained trial counsel was ineffective because he failed to disqualify the trial judge after the trial judge disclosed he knew one of the state's witnesses, Trooper Terrell.

Daniels filed an amended 29.15 motion asserting that his trial counsel was ineffective in failing to disqualify the trial judge and in failing to consult with Daniels about that situation. After an evidentiary hearing, the motion court found that Daniels was present when the trial judge informed the parties of his acquaintance with the witness, that Daniels discussed the matter with counsel, and that Daniels had agreed to have the trial proceed before that judge. The motion court further found that Daniels had not shown any prejudice.

Our review of the motion court's order is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers*, 801 S.W.2d 442, 446 (Mo.App.1990). The order is clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Jones v. State*, 773 S.W.2d 156, 157–58 (Mo. App.1989).

To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d

674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* In determining whether counsel's performance was deficient, the inquiry must be whether, in light of all the circumstances, counsel's assistance was reasonable. *Jones*, 773 S.W.2d at 158. In order to show prejudice, a movant must show there was a reasonable probability that, but for the errors by movant's attorney, the fact finder would have had a reasonable doubt respecting movant's guilt. *Childers*, 801 S.W.2d at 447.

■ The trial record reflects that the trial judge advised Daniels and his counsel of the nature and extent of his and his wife's acquaintance with the witness. The judge advised them that he would be fair but that Daniels could disqualify him. Daniels' attorney advised the trial judge that he would not disqualify him.

At the motion hearing Daniels' trial attorney testified that during these proceedings he had an off-the-record conversation with Daniels at the counsel table. He testified that they discussed "in detail" whether or not to stay in front of the trial judge and which other judges were available. He testified Daniels made the decision to stay in front of the judge. The motion judge, who was also the trial judge, stated that he had observed the conference take place. Likewise, Daniels' father testified that he heard the judge say he knew the witness but could give Daniels a fair trial and he observed Daniels' counsel walk over and talk to Daniels. Daniels, who had alleged in his amended motion that counsel's performance was deficient because counsel had not consulted with Daniels about the question of disqualification, admitted that counsel had advised him of the situation, but testified that he, Daniels, had told his attorney that he wanted a different judge.

We defer to the motion court's assessment of the credibility of the witnesses in giving credence to the trial attorney's version of the conversation. *State v. Martin*, 815 S.W.2d 127, 130 (Mo.App.1991). The evidence at the hearing supported a conclusion that counsel's assistance was reasonable. *See Wilson v. State*, 626 S.W.2d 243, 247–49 (Mo. banc 1982). The findings of the court are supported by the evidence and are not clearly erroneous.

The judgment of the motion court is affirmed. The direct appeal is remanded for a *Batson* hearing consistent with the holding of this opinion. In all other respects the judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.