STATE of Missouri, Plaintiff/Respondent,

v.

Lawrence DANIELS,
Defendant/Appellant.

Lawrence DANIELS, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60230, 61912.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 16, 1993.

S. Paige Canfield, St. Louis, for defendant/appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

CRANE, Judge.

Defendant appeals the denial of his *Batson*[1] challenge after this court remanded to the trial court pursuant to *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992) to determine whether the prosecutor exercised her peremptory strikes in a racially discriminatory manner. *State v. Daniels*, 861 S.W.2d 564 (Mo.App.E.D.1993). We found the trial court was required to ask the prosecutor for her explanations for striking three black venirepersons before determining whether the strikes were racially motivated. *Id.* at 566.

On May 28, 1993, pursuant to the remand, the trial court conducted an evidentiary hearing and subsequently denied the *Batson* motion. Although he was given notice, defendant's trial counsel did not appear at this hearing. On July 22, 1993 the trial court held a hearing on defendant's Motion to Reconsider and gave defendant's counsel an opportunity to respond to the prosecutor's reasons for her strikes. The court denied the *Batson* motion. The parties filed supplemental briefs in this court addressing the trial court's rejection of the *Batson* claim. We now affirm the trial court's order.

In his supplemental brief, defendant argues the trial court erred in overruling his motion to quash the jury panel because the trial court's action denied him his equal protection rights under the United States and Missouri Constitutions. Defendant argues the state's explanations for its strikes of three black venirepersons were pretextual.

At the hearing on remand, the prosecutor gave her reasons for striking Crystal Watts, a black female, Louis Stone, a black male, and the alternate Georgia Toler, a black female. The prosecutor stated she struck Watts for two reasons. First, she said Watts "expressed reservations about the law on Armed Criminal Action," which was one of the charges in the case. Specifically, the prosecutor said she asked the venirepersons if they thought it was fair that armed criminal action was a separate charge. She said, "Miss Watts said she wasn't sure about that,

she wasn't sure that was fair and she wasn't sure they should be charged both for the shooting and the Armed Criminal Action." Secondly, the prosecutor informed the jury that a second individual was involved with Daniels in the shooting, but that the jury would not be told what had happened to this person. The prosecutor stated that with respect to this issue, "Miss Watts said that she had a problem with that. She was not sure she could make a decision with regard to this defendant without knowing what happened to the other guy that was involved."

The prosecutor stated she struck Stone because he agreed with statements made by another venireperson, Robert Weber. The prosecutor stated "[Weber] said no, he could not accept as true facts that were testified to only by one witness. He said he would require substantial corroboration and he'd require more than one witness to accept a set of facts as true." The prosecutor said she next questioned Stone and "his response to me on that question was 'I agree with Mr. Weber.'" The prosecutor stated that although Stone said he could follow the law even though he felt this way, "his answer to that was obviously evasive because he had said very strongly that he agreed with Mr. Weber and he wouldn't look directly in my eye when he said 'yes, I could follow the law.' He sort of said it and looked away." The prosecutor stated she also struck Weber, a white male, for the same reasons she struck Stone.

The prosecutor stated she struck the alternate Toler because "she was laughing during her answers to one of my questions. I felt that she was not taking the process seriously and had no conception of what was going on."

At the hearing on the Motion to Reconsider, defense counsel argued that the prosecutor's reasons for each strike were pretextual. Defense counsel stated that Watts was initially confused by the question about armed criminal action, but upon further questioning stated she could be fair. Defense counsel added that Watts was also initially confused about what information concerning the second individual would be in evidence and that,

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

once this confusion was cleared up, Watts stated she could be fair.

As to Stone, defense counsel stated that he was also confused by the prosecutor's question about hearing from only one witness, and that once defense counsel mentioned there could be other evidence, Stone said he could be fair. With respect to Toler, defense counsel's only response was that Toler had stated she could be fair.

The trial court denied the *Batson* motion. The court found a sufficient non-racial basis for striking Watts because she had indicated she could not make a decision unless she knew what had happened to the other person in the car with Daniels. The court found there was a sufficient non-racial basis for striking Stone because Stone had agreed with another venireperson that he could not return a verdict on the believability of the one eyewitness. The trial judge recollected that Toler had been "flippant and didn't take the matter seriously," and referred to the transcript where the court had commented on the record at voir dire that Toler had laughed when answering a question.

■ The trial court's determination regarding purposeful discrimination is a finding of fact that should not be disturbed on appeal unless clearly erroneous. *State v. Parker,* 836 S.W.2d 930, 939 note 7 (Mo. banc 1992). *See also, State v. Pullen,* 843 S.W.2d 360, 362–63 (Mo. banc 1992). To be clearly erroneous, the reviewing court must have a "definite and firm conviction that a mistake was made." *State v. Gray,* 849 S.W.2d 115, 117 (Mo.App.1993).

In *Parker* the supreme court enunciated the procedure to be followed in addressing a *Batson* objection: (1) defendant must raise a *Batson* challenge to one or more specific venirepersons struck by the state and identify the cognizable racial group to which they belong; (2) the state must then come forward with "reasonably specific and clear race-neutral explanations for the strike"; and (3) if the state does so, defendant must then show "the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." 836 S.W.2d at 939.

■ In determining whether a defendant has carried the burden of proving purposeful discrimination, the trial court should view the plausibility of the state's explanations in light of the totality of the circumstances of the case. *Id.* at 939. Other factors which the trial court should consider include: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of relevance between the explanations and the case to be tried "in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment"; (3) the prosecutor's demeanor or statements during voir dire; (4) the demeanor of the excluded venirepersons; (5) the trial court's past experiences with the prosecutor; and (6) other objective factors bearing on the state's motive to discriminate on the basis of race. *Id.* at 939–40. "[T]he state's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes." *Id.* at 940.

■ The trial court's finding that the strikes were not racially motivated is not clearly erroneous. The challenge to venirepersons Watts and Stone on the basis that their responses indicated that they would have problems following the law is a race-neutral and objective explanation and is supported by the record of the *Batson* hearing. Even if the venireperson gave different responses upon further questioning, the prosecutor was not bound by those responses but could reasonably use the earlier response as a basis for a peremptory strike. Prosecutors are generally free to use "horse sense" and "play hunches" for peremptory challenges as long as the challenge is based on race-neutral and objective justifications. *Parker,* 836 S.W.2d at 939, note 8.

Other circumstances support the trial judge's finding of non-discriminatory intent in striking venirepersons Watts and Stone. The critical responses given by Watts and Stone related to their ability to follow the law as it applied to the case before them. The prosecutor also struck venireperson Weber, a

white male, who gave the response with which Stone agreed. Further, the victim and sole eyewitness, an Illinois State trooper, was black. We note also that the state used four of six peremptory challenges to strike whites, resulting in a jury of eight whites, four blacks, and one black alternate.

 The prosecutor's explanation of her strike of Toler was supported by a similar observation by the court on the record during voir dire. The trial court was in the best position to observe that venireperson's demeanor and determine whether it provided a non-racial basis for the peremptory strike.

The order of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.