**STATE of Missouri, Plaintiff/Respondent,**

v.

**Christopher DUNN, Defendant/Appellant.**

No. 60805.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 12, 1995.

Craig A. Johnston, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Chief Judge.

Defendant Christopher Dunn was convicted and sentenced on charges of first degree murder, two counts of first degree assault, and three counts of armed criminal action. At trial the state used its six peremptory strikes to strike one of two African–American venirepersons and five white venirepersons. The defense made a *Batson*[1] motion which the trial court overruled without requesting the state to give reasons for its strike.

Defendant appealed from the trial court's judgment and from the motion court's denial of his 29.15 motion for post-conviction relief. Pursuant to *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992), *cert. denied,* 506 U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), we remanded to the trial court for an evidentiary hearing on the *Batson* motion to determine whether the prosecutor exercised his peremptory strikes in a racially discriminatory manner. *State v. Dunn,* 889 S.W.2d 65, 69 (Mo.App.1994). We denied all other points defendant raised on appeal from the trial court and affirmed the judgment of the motion court. *Id.*

On March 9, 1995 the trial court conducted an evidentiary hearing and subsequently denied the *Batson* motion. The parties filed supplemental briefs in this court addressing the trial court's rejection of the *Batson* claim. We now affirm the judgment of the trial court.

In his supplemental brief, defendant asserts the trial court clearly erred in overruling his motion to quash the jury panel. Defendant argues the state's explanations for its strike of venireperson Ronald Lee Jackson, an African–American, were pretextual because the state did not articulate specific race-neutral reasons for the strike and did not strike two similarly situated white venirepersons.

During voir dire Jackson said he had been with the Prejudice Awareness and Reduction Project and had met assistant public defender Cathy Kelly when he was conducting training for attorneys with the Missouri public defender system. He did not recall if defendant's counsel, who was also an assistant public defender, was also in one of his workshops. Jackson also said that he had a brother-in-law who had been arrested for stealing and placed on probation. Jackson further reported that he went to graduate school with fellow venireperson Cynthia Compton.

Also during voir dire venireperson Compton confirmed that she knew Jackson. She also said she knew the St. Louis circuit attorney from fund raisers, was director of the

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Community Support Program which had clients who had contact with the criminal justice system as defendants or victims, had previously been a witness, and had served on civil juries. Two white venirepersons advised that they also knew persons in a public defender's office. Another white venireperson related that her ex-husband had been arrested for, but not convicted of, child abuse, and another white venireperson reported that his brother had been questioned about a crime.

The state used its peremptory strikes to strike Jackson and five white venirepersons, including Compton and the two who reported knowing people in a public defender's office. Defense counsel made a *Batson* motion, noting that there were only two African–American venirepersons and the state struck one of them. The court was advised that the three victims in the case were African–American and the main homicide investigator on the case was also African–American.

At the hearing after remand, the state called a former prosecutor, who had been the prosecutor at defendant's trial, to testify. The former prosecutor offered three reasons for his peremptory strike of venireperson Jackson: (1) Jackson had met Cathy Kelly, an assistant public defender who worked for the City of St. Louis, through a workshop, (2) Jackson had a brother-in-law who had been arrested and placed on probation for stealing, and (3) Jackson had gone to school with Cynthia Compton, another venireperson, whom the prosecutor also struck from the panel. He placed the most emphasis on Jackson's connection with Kelly. The former prosecutor testified that he did not strike two white venirepersons who had relatives with prior law enforcement encounters because he believed that the arrest of the one venireperson's former husband for child abuse would be favorable to the state and the other's brother was never charged with a crime, and had not pleaded guilty or been placed on probation.

After the former prosecutor gave his reasons, defense counsel responded that Jackson's acquaintance with assistant public defender Kelly would not affect his ability to be a good juror since Kelly was not involved in the trial. Defense counsel asserted that the fact that Jackson knew another venireperson did not bear on Jackson's qualifications. Defense counsel also argued that the fact that Jackson's brother-in-law had been placed on probation did not involve Jackson personally and that two white venirepersons who had relatives with law enforcement encounters were left on the panel.

The trial court denied the motion and issued written findings of fact. It addressed each of the three reasons proffered by the state. It found each of the state's explanations reasonably specific and race-neutral. It further found that defendant failed to meet its burden of showing that the state's proffered reasons were pretextual and that the strikes were in fact racially motivated. Specifically, the court found that Jackson's acquaintance with Kelly was an appropriate factor for the state to consider in exercising its peremptory strikes. It did not find that the two white venirepersons were similarly situated, because the state considered the arrest of the one venireperson's ex-husband to be favorable to the state and the other venireperson's brother was only questioned; he was not charged or placed on probation. It found that the state also struck Compton, the white venireperson who had gone to school with Jackson.

■ In *Parker*, our supreme court enunciated the procedure to be followed in addressing a *Batson* challenge: (1) the defendant must raise a *Batson* challenge "to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong;" (2) the state must then "come forward with reasonably specific and clear race-neutral explanations for the strike;"[2] and (3) if the state provides such explanations, the de-

<hr />

2. The prosecutor's explanation will be deemed race-neutral unless discriminatory intent is inherent in the explanation. *Hernandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405–06 (1991); *Purkett v.*

*Elem,* 514 U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839–40 (1995), *reh'g denied,* —— U.S. ——, 115 S.Ct. 2635, 132 L.Ed.2d 874 (1995); *Parker,* 836 S.W.2d at 934, 939 n. 6.

fendant must then "show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." *Parker*, 836 S.W.2d at 939; *State v. Daniels*, 865 S.W.2d 400, 402 (Mo. App.1993). *See also Purkett v. Elem*, 514 U.S. ——, —— – ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 838–40 (1995), *reh'g denied*, —— U.S. ——, 115 S.Ct. 2635, 132 L.Ed.2d 874 (1995).

■■■■ In determining whether a defendant has carried the burden of proving purposeful discrimination, the trial court should view the plausibility of the state's explanations in light of the totality of the facts and circumstances of the case. *Parker*, 836 S.W.2d at 934, 939. Facts and circumstances which detract from or lend credence to the prosecutor's proffered explanation include: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of relevance between the explanations and the case to be tried "in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment;" (3) the prosecutor's demeanor or statements during voir dire; (4) the demeanor of the excluded venirepersons; (5) the trial court's past experiences with the prosecutor; and (6) other objective factors bearing on the state's motive to discriminate on the basis of race, such as the conditions prevailing in the community, and the race of the defendant, the victim, and the material witnesses. *Id.* at 939–40. "[T]he state's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are relevant factors for consideration only to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes." *Id.* at 940.

■■■■ The trial court's determination that there was no purposeful discrimination is a finding of fact which should not be disturbed on appeal unless clearly erroneous. *Parker*, 836 S.W.2d at 939 n. 7; *State v. Gray*, 887 S.W.2d 369, 384, 385 (Mo. banc 1994). We do not find a determination clearly erroneous unless we have a definite and firm conviction that a mistake was made. *Daniels*, 865 S.W.2d at 402; *Gray*, 887 S.W.2d at 385. Because "[m]uch of the determination, by necessity, turns upon evaluation of intangibles such as credibility and demeanor," trial judges are vested with considerable discretion in determining whether a defendant has established purposeful discrimination. *Parker*, 836 S.W.2d at 934.

Defendant argues that the trial court clearly erred in overruling his *Batson* motion because the state's explanations were not "specific, legitimate, race neutral reasons related to the case." Defendant argues that Jackson's familiarity with assistant public defender Cathy Kelly was not a race-neutral reasonably specific and clear explanation related to his case because Kelly had no relation to defendant's trial. Defendant contends that Jackson's acquaintance with fellow venireperson Cynthia Compton was not a plausible or legitimate race-neutral reason that would affect Jackson's ability to perform his duties as a juror, and, that once the state struck Compton, there was no need to strike Jackson. Defendant last argues that the fact Jackson had a brother-in-law who was placed on probation for stealing was not case specific or legitimate and was clearly pretextual because two similarly situated white venirepersons were left on the panel.

In his supplemental brief defendant argues that the state must articulate plausible race-neutral reasons for believing that the listed factors would affect the venireperson's ability to perform his or her duties as a juror, citing *Elem v. Purkett*, 25 F.3d 679, 683 (8th Cir. 1994).[3] Defendant also relies on *State v. Davis*, 894 S.W.2d 703, 706 (Mo.App.1995) to support his position that the state must articulate more than facially legitimate reasons before the defendant must show that the state's explanation is pretextual.

The Supreme Court reversed the Eighth Circuit decision in *Elem* on these issues. The Court held:

---

**3.** This court's opinion in this matter is found in *State v. Elem*, 747 S.W.2d 772, 774 (Mo.App. 1988).

The second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a "plausible" basis for believing that "the person's ability to perform his or her duties as a juror" will be affected.

*Purkett*, 514 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (second alteration in original) (citations omitted).

The Supreme Court went on to hold that *Batson*'s warning that the reason must be a clear and reasonably specific explanation of the prosecutor's legitimate reasons for exercising the challenges and that the reason must be related to the particular case to be tried "was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Purkett*, 514 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839–40. The Court further held, "[w]hat is meant by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett*, 514 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 840.

Defendant asks us to evaluate the prosecutor's reasons in addition to the trial court's finding of credibility. He argues that it is not sufficient to argue that affirmance must follow because the trial judge considered the prosecutor credible, citing *Elem*, 25 F.3d at 683–84 and *dicta* in *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). The Supreme Court rejected this approach as taken by *Elem*. *Purkett*, —— U.S. at ——-——, 115 S.Ct. at 1771–72, 131 L.Ed.2d at 839–41. Further, in *Hernandez* the Supreme Court pointed out:

But if an appellate court accepts a trial court's finding that a prosecutor's race-neutral explanation for his peremptory challenges should be believed, we fail to see how the appellate court nevertheless could find discrimination. The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review.

*Hernandez v. New York*, 500 U.S. 352, 367, 111 S.Ct. 1859, 1870, 114 L.Ed.2d 395, 410 (1991).

■ Thus, the issue for this court is whether the trial court's findings on the issue of discriminatory intent are clearly erroneous, a finding which turns primarily on an assessment of credibility. *Purkett*, 514 U.S. at ——, 115 S.Ct. at 1772, 131 L.Ed.2d at 840.

■ The explanations given were race-neutral. The decisive question is whether counsel's race-neutral explanation will be believed by the trial court. *Hernandez*, 500 U.S. at 364, 111 S.Ct. at 1869, 114 L.Ed.2d at 409; *State v. Wilhite*, 858 S.W.2d 293, 296 (Mo.App.1993). The trial court accepted the explanations. We have examined the explanations and the circumstances which appear in the record. It is clear from the findings that the trial court viewed the plausibility of the state's explanations in light of the totality of the facts and circumstances of the case, as *Parker* requires. *Parker*, 836 S.W.2d at 934, 939. *See also Purkett*, 514 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (holding that the persuasiveness of the justification becomes relevant in the third *Batson* step, where a trial judge may find lack of persuasiveness supports a finding of pretext).

The trial court took a permissible view of the evidence in crediting the prosecutor's explanation. We have no opportunity to review the demeanor of the prosecutor; however, there were many objective factors in the record which would support a finding of no intent to discriminate. The record discloses that, unlike Jackson's brother-in-law, the two referenced white venirepersons' relatives were not convicted of crimes. The record further discloses that neither of these venirepersons knew someone in the public defender's office or another venireperson. On the

other hand, the state struck Compton, a white venireperson who knew Jackson. The record also discloses that the state struck two white venirepersons who knew persons in public defenders' offices. Although there were two African–Americans on the venire panel, the state only struck one, Jackson. All of the state's remaining peremptory strikes were exercised against white venirepersons. The three victims in this case were also African–Americans. The main homicide investigator, who prepared the photospread and conducted the line-up, was an African–American.

The trial court's findings are not clearly erroneous. The judgment of the trial court is affirmed.

SIMON and GRIMM, JJ., concur.

