STATE of Missouri, Respondent,

v.

Robert TURNER, Appellant.

Nos. WD 49593, WD 51155.

Missouri Court of Appeals,
Western District.

May 14, 1996.

Rosemary E. Percival, Assistant Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Robert Turner appeals his convictions for burglary in the second degree, section 569.170, RSMo 1994, and stealing over $150, section 570.030, RSMo 1994, following a jury trial and the denial of his Rule 29.15 postconviction motion. He was sentenced as a prior and persistent offender, sections 558.016, 557.036.4 and 558.019, RSMo 1994, to two concurrent five-year terms of imprisonment.

Mr. Turner filed a *pro se* Rule 29.15 motion seeking to vacate the convictions and sentences imposed. An amended motion alleging numerous grounds for relief was filed on Mr. Turner's behalf by appointed counsel. After an evidentiary hearing, the motion court entered its order overruling his motion for postconviction relief.

Mr. Turner asserts three points on appeal. He claims (1) the evidence was insufficient to prove his guilt of second degree burglary and stealing over $150, and, therefore, the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence; (2) the trial court erred in overruling his *Batson* challenge to two prosecutor peremptory strikes; and (3) the court erred in overruling his Rule 29.15 postconviction motion because his trial counsel was ineffective for not peremptorily striking three veniremen who had special knowledge of the scene of the alleged crimes and related events and who, therefore, were biased.

The judgment of conviction in two counts and the order denying the Rule 29.15 postconviction motion are affirmed.

In 1978, Mr. Turner purchased a building located at 2541 Prospect in Kansas City, Missouri. The six-unit building consisted of four store fronts and two upstairs apartments. In 1983, he transferred ownership of the property to his business, Prospect of Roots. In 1990, the Jackson County Collection Department (Collection Department) sent the corporation at least four letters demanding overdue taxes owed on the property to the county. In May of 1990, a petition letter was sent by certified mail to the corporation by the Collection Department informing it that a petition for a foreclosure suit had been filed on the property. The Collection Department received the signed certification card indicating receipt of the letter by Mr. Turner. Notice of foreclosure was then published in a local newspaper for four consecutive weeks.

The Jackson County Collection Department obtained a notice of judgment on the property and sent a copy by first class mail to the corporation. A certified notice of sale letter was also sent to the corporation 30 days prior to the sale but was returned unclaimed. Two weeks before the sale, neon notices were posted on the building itself. Additionally, sale notices were placed in a local newspaper for four consecutive weeks prior to the sale.

On September 30, October 2, and October 3, 1991, the property was offered for sale on the courthouse steps, but it did not sell. Land Trust of Jackson County, a quasi city-county agency that holds foreclosed properties that do not sell, received the property and recorded its deed on May 22, 1992.

In April of 1993, the City of Kansas City, Missouri, (City) purchased the property from Land Trust for an urban police station. After the property's acquisition, Joseph Watson, an urban planner and project manager for the City, inspected the property monthly to ensure that it was secure with no open windows or doors.

Upon receiving complaints that the property was being used, Mr. Watson contacted the Kansas City Codes Department and the Public Works Department requesting an inspection. The Codes Department determined that the building had code violations and posted it unfit for human habitation. The Public Works Department then secured the building with boards and locks. Mr. Watson next visited the building on November 19, 1993, and found all of the doors and windows intact.

The Kansas City Police Department also received several complaints regarding one or

more persons having been in the building located at 2541 Prospect. As a result, Mr. Turner was contacted by police officers and informed that he no longer owned the building. He was told that if he was found on the property, he would be arrested.

At approximately 9:30 or 10:00 a.m. on November 30, 1993, Mr. Watson again inspected the property located at 2541 Prospect. He found that the back door had been forced open and windows from the second floor apartments removed. As Mr. Watson was exiting the back of the building, he encountered Mr. Turner. Mr. Watson identified himself and informed Mr. Turner that he should not be in the building. Mr. Turner responded that he owned the building and threatened to burn it to the ground if the City tried to take it. Mr. Watson returned to his office after the conversation.

At 1:00 that afternoon, Mr. Watson returned to the property with police officers and found Mr. Turner walking down the street with a window from the building. The police questioned Mr. Turner about the windows, and he again responded that he owned the building and its contents. Mr. Turner was then arrested.

Testifying at trial in his own defense, Mr. Turner claimed that he had not been notified of and was unaware of the foreclosure because he lived in California from 1988 through 1991. Mr. Turner explained that upon returning to the building in 1993, he found it to have been vandalized and was simply trying to salvage what he could from the property.

### I. Sufficiency of the Evidence

In his first point on appeal, Mr. Turner claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to prove his guilt of second degree burglary and stealing over $150. He argues that the state failed to demonstrate he entered the property located at 2541 Prospect with an intent to steal and that the City owned the stolen windows.

▆ Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995); *State v. Idlebird*, 896 S.W.2d 656, 660 (Mo. App.1995). The reviewing appellate court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the state and disregards all evidence and inferences to the contrary. *Id.* It neither weighs the evidence nor determines the reliability or credibility of witnesses. *Idlebird*, 896 S.W.2d at 660–661.

The crime of burglary in the second degree is committed when a person knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein. § 569.170, RSMo 1994. A person enters or remains unlawfully in a building when he is not licensed or privileged to enter or remain in the building. § 569.010(8), RSMo 1994; *State v. Chandler*, 635 S.W.2d 338, 341–342 (Mo. banc 1982). The crime of stealing is committed if a person appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion. § 570.030.1, RSMo 1994.

▆ Mr. Turner contends the state failed to prove that he knowingly entered unlawfully 2541 Prospect with an intent to steal windows and that the City owned the windows. He argues that since the only access to the upstairs apartments from which the windows were stolen was through 2539 Prospect, he could not have unlawfully entered 2541 Prospect with an intent to steal. He also asserts that the state's focus on 2541 Prospect failed to demonstrate that he no longer owned 2539 Prospect.

The evidence presented at trial demonstrated that Mr. Turner entered the building owned by the City of Kansas City and located at 2541 Prospect without license or privilege to do so with an intent commit a crime therein. The state showed that the building was foreclosed upon by the county due to unpaid taxes and that the City eventually purchased the entire building. Several attempts were made to notify Mr. Turner's

corporation of the foreclosure including certified letters, postings on the building itself and local newspaper notices. Additionally, Kansas City police officers informed Mr. Turner that he no longer owned the property and would be arrested if he entered the building. Despite these warnings, Mr. Turner entered the building and removed windows, claiming that he still owned the building.

Mr. Turner attempts to argue on appeal that 2541 Prospect is the address of only one of the four storefronts within the entire building. At trial, however, he did not make such a distinction. The entire building was referred to as 2541 Prospect throughout the trial. When asked at trial to describe the property located at 2541 Prospect, Mr. Turner referred to it as a six unit commercial building. The evidence was, therefore, sufficient to prove that Mr. Turner knowingly entered unlawfully the building located at 2541 Prospect and owned by the City with an intent to steal the windows. Point one is denied.

## II. *Batson* Challenge

In point two, Mr. Turner claims that the trial court erred in overruling his challenge to the prosecutor's use of peremptory strikes against two African–American venirepersons. He argues that the state's purported race-neutral explanations were pretextual.

The Equal Protection Clause of the United States Constitution prohibits the prosecutor's use of peremptory challenges to exclude jurors identified as belonging to a cognizable racial minority solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The trial court's determination regarding purposeful discrimination in the exercise of peremptory strikes is a finding of fact that should not be disturbed on appeal unless clearly erroneous. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Daniels*, 865 S.W.2d 400, 402 (Mo.App.1993). To be clearly erroneous, the reviewing court must have a firm and definite impression that a mistake has been made. *Id.*

To establish a *Batson* claim, the defendant must object to the prosecutor's use of peremptory challenges as violating *Batson* and identify the cognizable racial group to which the stricken venireperson belongs. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). The state must then provide reasonably specific and clear race-neutral explanations for the strike. *Id.* The prosecutor's explanations need not be plausible or persuasive. *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The prosecutor is permitted to exercise a peremptory strike based on legitimate "hunches" and past experience so long as racial discrimination is not the motive. *State v. Pitts*, 852 S.W.2d 405, 408 (Mo.App.1993). The prosecutor's explanation is presumed to be race-neutral unless a discriminatory intent is inherent in the explanation. *Parker*, 836 S.W.2d at 934. Once the state articulates an acceptable reason for the strike, the defendant assumes the burden of convincing the trial court that the explanation is not legitimate. *Purkett*, —— U.S. at ——, 115 S.Ct. at 1771. The defendant must show that the state's proffered reasons were merely pretextual and that the strikes were racially motivated. *Parker*, 836 S.W.2d at 939. Implausible or fantastic justifications for the strike may be found to be pretexts for purposeful discrimination. *Purkett*, —— U.S. at ——, 115 S.Ct. at 1771.

In determining whether the defendant has established the existence of purposeful discrimination, the trial court should consider a variety of factors, including: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of relevance between the explanations and the case to be tried; (3) the prosecutor's statements or demeanor during voir dire; (4) the demeanor of the excluded venirepersons; (5) the trial court's past experiences with the prosecutor; and (6) other objective factors bearing on the state's motive to discriminate on the basis of race. *Daniels*, 865 S.W.2d at 402. The trial court should view the plausibility of the state's explanations in light of the totality of the circumstances. *Id.*

The state exercised its peremptory strikes, and Mr. Turner challenged two of the state's peremptory strikes asserting *Batson.* The state struck venireperson A.S., and Mr. Turner challenged the strike. The prosecuting attorney, on behalf of the state, responded by explaining that A.S. was stricken because she was overheard telling another venireperson who was asked about the veracity of police officers that "they do lie". The prosecutor further explained that A.S. had closed her eyes several times during questioning, but the state failed to make a record of A.S.'s alleged inattentiveness. Mr. Turner then challenged the peremptory strike of venireperson, W.W. The state explained that W.W. was stricken because he was convicted of a DWI charge in Missouri and had a family member in the penitentiary.

The state's justifications for striking A.S. and W.W. were race-neutral, and discriminatory intent was not inherent in the explanations. Its striking of A.S. on the ground that the prosecutor heard her vocalize criticism of the honesty of police officers was permissible. *See State v. Pitts,* 852 S.W.2d 405, 408 (Mo.App.1993). Likewise, its explanation that W.W. had been convicted of DWI was a specific and race-neutral reason for his being stricken. Appropriately, the trial court accepted the explanations. The burden then shifted, and Mr. Turner was required to demonstrate that the justifications were merely pretextual.

Through his counsel, Mr. Turner responded that neither he nor defense counsel heard A.S.'s remarks. He further responded that the prosecution failed to make a record during voir dire of A.S.'s remarks or her inattentiveness. Regarding the striking of W.W., Mr. Turner explained that other venirepersons who were not stricken by the state verbalized that they also had family members who were incarcerated. He also argued that several other venirepersons stated they had received traffic tickets which they had contested.

Mr. Turner did not satisfy his burden of proving purposeful discrimination. He did not demonstrate circumstances that tended to show racial discrimination had occurred and that the state's explanations were meritless. Mr. Turner presented no evidence regarding the final racial makeup of the jury or the number of African–Americans stricken by the state to help raise an inference that A.S. and W.W. were stricken because of their race. Furthermore, no jury members who were not stricken were "similarly situated" with A.S. or W.W.[1] The trial court's denial of Mr. Turner's challenge was not clearly erroneous. Point two is denied.

### III. Rule 29.15 Postconviction Motion

In his final point, Mr. Turner claims that the trial court erred in overruling his Rule 29.15 motion for postconviction relief. He argues that his counsel was ineffective for failing to strike three potentially biased venirepersons.[2]

Appellate review of the denial of a motion for postconviction relief is limited to whether the findings of fact and conclusions of law issued by the motion court are clearly

---

1. The court noted that several venirepersons had relatives in the penitentiary and disregarded this explanation as it pertained to W.W. It, however, found that W.W.'s DWI conviction was a valid reason for his being stricken.

2. Mr. Turner claims that the motion court incorrectly held that his claim of ineffective assistance of counsel was not cognizable under *Smith v. State,* 684 S.W.2d 520, 522 (Mo.App.1984). *Smith* held that error regarding improper jury selection may not be raised for the first time in a postconviction motion absent a showing that the movant had no knowledge of the improper jury selection until after his trial. In *Smith,* the issue was the county's process of selecting venires that allegedly intentionally excluded African–Americans.

A claim of trial counsel ineffectiveness for failing to strike certain jurors is cognizable in a postconviction motion. *See State v. Brown,* 902 S.W.2d 278, 295 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *State v. Silvey,* 894 S.W.2d 662, 671 (Mo. banc 1995). Therefore, the motion court erred in denying Mr. Turner's motion on this basis. The motion court, however, further stated that even if Mr. Turner's claim was cognizable, he failed to establish that he suffered any prejudice as a result of the claimed ineffective assistance of counsel. Even if the motion court's basis for denying relief was incorrect, its judgment will be affirmed on appeal if it is sustainable on other grounds. *State v. Bradley,* 811 S.W.2d 379, 383 (Mo. banc 1991).

erroneous. *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). The findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Id.*

 To prevail on an ineffective assistance of counsel claim, a movant must establish that (1) his attorney's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would manifest under similar circumstances and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "Prejudice exists only where trial counsel's acts or failures to act are outcome determinative." *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The movant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Id.* Trial strategy is not a ground for ineffective assistance of counsel. *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

 "The critical question in a bias challenge is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially." *State v. Storey*, 901 S.W.2d 886, 894 (Mo. banc 1995)(citing *State v. Parker*, 886 S.W.2d 908, 919 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995)). If a venireperson unequivocally makes such an indication, no legal basis exists to excuse the venireperson for cause, and counsel is not ineffective for failing to seek removal. *Storey*, 901 S.W.2d at 894 (citing *Antwine v. State*, 791 S.W.2d 403, 411 (Mo. banc 1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991)).

Mr. Turner argues that three venirepersons who were familiar with the area around the 2500 block of Prospect "demonstrated an obvious potential for prejudice" against him. He claims that their familiarity with the area potentially prejudiced him because they may have known that the building had eventually burned and would attribute blame to him. Mr. Turner contends, therefore, that he was prejudiced by his counsel's failure to challenge the venirepersons who ultimately served on his jury.

The record reflects that all three venirepersons unambiguously said that their familiarity with the area would not prevent them from being fair and impartial jurors. No legal basis to excuse the three venirepersons from the jury for cause existing, Mr. Turner's trial counsel was not ineffective for failing to seek their removal. The motion court, therefore, did not err in denying Mr. Turner's motion for postconviction relief. Point three is denied.

The judgment of conviction in two counts and the order denying the Rule 29.15 motion are affirmed.

All concur.